## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN NORBERG, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SHUTTERFLY, INC.; and THISLIFE, LLC, <br><br> Defendants. | Civil Action No. <br><br><br><br> (JURY TRIAL DEMANDED) |

## CLASS ACTION COMPLAINT

Plaintiff Brian Norberg, individually and on behalf of all others similarly situated, brings this

Class Action Complaint for violations of the Illinois Biometric Information Privacy Act ("BIPA"),

740 ILCS 14/1 *et seq.*, against Shutterfly, Inc. ("Shutterfly") and ThisLife, LLC ("ThisLife"), and

alleges as follows based on personal knowledge as to himself, on the investigation of his counsel and

the advice and consultation of certain third-party agents as to technical matters, and on information

and belief as to all other matters, and demands trial by jury:

## NATURE OF ACTION

1.      Defendants operate several e-commerce and social networking websites that offer

a wide range of electronic and print-based photo storage and photo sharing services.  Plaintiff

brings this action for damages and other legal and equitable remedies resulting from the illegal

actions of Defendants in collecting, storing and using Plaintiff's and other similarly situated

individuals' biometric identifiers[1] and biometric information[2] (referred to collectively at times as "biometrics") without informed written consent, in direct violation of the BIPA.

2.      The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

3.      In recognition of these concerns over the security of individuals' biometrics – particularly in the City of Chicago, which was recently selected by major national corporations as a "pilot testing site[] for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias," 740 ILCS 14/5(b) – the Illinois Legislature enacted the BIPA, which provides, *inter alia*, that a private entity like Shutterfly and its wholly owned subsidiary ThisLife may not obtain and/or possess an individual's biometrics unless it: (1) informs that person in writing that biometric identifiers or information will be collected or stored, *see id.*; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used, *see id.*; (3) receives a written release from the person for the collection of his or her biometric identifiers or information, *see id.*; and (4) publishes publically available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information, *see* 740 ILCS 14/15(a).

---

[1] A "biometric identifier" is any personal feature that is unique to an individual, including fingerprints, iris scans, DNA and "face geometry", among others.

[2] "Biometric information" is any information captured, converted, stored or shared based on a person's biometric identifier used to identify an individual.

493424.1

4.     In direct violation of each of the foregoing provisions of § 15(a) and § 15(b) of the BIPA, Defendants are actively collecting, storing, and using – without providing notice, obtaining informed written consent or publishing data retention policies – the biometrics of millions of unwitting individuals who are not users of Shutterfly.

5.     Specifically, Defendants have created, collected and stored millions of "face templates" (or "face prints") – highly detailed geometric maps of the face – from millions of individuals, many thousands of whom are non Shutterfly users residing in the State of Illinois. Defendants create these templates using sophisticated facial recognition technology that extracts and analyzes data from the points and contours of faces appearing in photos uploaded by their users. Each face template is unique to a particular individual, in the same way that a fingerprint or voiceprint uniquely identifies one and only one person.

6.     Plaintiff brings this action individually and on behalf of all others similarly situated to prevent Defendants from further violating the privacy rights of Illinois residents, and to recover statutory damages for Defendants' unauthorized collection, storage and use of non-users' biometrics in violation of the BIPA.

**PARTIES**

7.     Plaintiff is, and has been at all relevant times, a resident and citizen of Chicago, lllinois. Plaintiff does not have a Shutterfly or ThisLife account and has never used Shutterfly or ThisLife.

8.     Defendant Shutterfly is a Delaware corporation with its headquarters and principal executive offices at 2800 Bridge Parkway, Redwood City, California 94065. Shutterfly is a citizen of the states of Delaware and California.

3

9.      Defendant ThisLife is a wholly owned subsidiary of Shutterfly.  ThisLife is a Delaware corporation with its headquarters and principal executive offices at 629 Emerson Street, Palo Alto, California 94301. ThisLife is a citizen of the states of Delaware and California.

## JURISDICTION AND VENUE

10.      Jurisdiction is also proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA"), because: (i) the proposed class consists of well over 100 members; (ii) the parties are minimally diverse, as members of the proposed class, including Plaintiff, are citizens of a state different from Defendants' home states; and (iii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interests and costs.  There are likely tens of thousands of individuals who, while residing in Illinois, had their photos uploaded to Shutterfly. The estimated number of non Shutterfly users residing in Illinois who were impacted by Defendants conduct multiplied by BIPA's statutory liquidated damages figure ($5,000.00 for each intentional or reckless violation and $1,000.00 for each negligent violation) easily exceeds CAFA's $5,000,000.00 threshold.

11.      Venue is proper in this District because Defendants conduct business transactions in this District, and because the causes of action arose, in substantial part, in this District. Venue is also proper because Plaintiff resides in this District.

## FACTUAL BACKGROUND

### I.     Biometric Technology Implicates Consumer Privacy Concerns

12.      "Biometrics" refers to unique physical characteristics used to identify an individual. One of the most prevalent uses of biometrics is in facial recognition technology, which works by scanning an image for human faces (or scanning an actual person's face), extracting facial feature data based on specific "biometric identifiers" (*i.e.*, details about the face's geometry as determined

4

493424.1

by facial points and contours), and comparing the resulting "face template" (or "faceprint") against the face templates stored in a "face template database." If a database match is found, an individual may be identified.

13. The use of facial recognition technology in the commercial context presents numerous consumer privacy concerns. During a 2012 hearing before the United States Senate Subcommittee on Privacy, Technology, and the Law, Senator Al Franken (D-MN) stated that "there is nothing inherently right or wrong with [facial recognition technology, but] if we do not stop and carefully consider the way we use [it], it may also be abused in ways that could threaten basic aspects of our privacy and civil liberties."[3] Senator Franken noted, for example, that facial recognition technology could be "abused to not only identify protesters at political events and rallies, but to target them for selective jailing and prosecution."[4]

14. The Federal Trade Commission ("FTC") has raised similar concerns, and recently released a "Best Practices" guide for companies using facial recognition technology.[5] In the guide, the Commission underscores the importance of companies obtaining affirmative consent from consumers before extracting and collecting their biometric identifiers and biometric information from digital photographs.

15. As explained below, the Defendants in this case made no effort whatsoever to obtain consent from unwitting third parties when they introduced their facial recognition

---

[3] *What Facial Recognition Technology Means for Privacy and Civil Liberties: Hearing Before the Subcomm. on Privacy, Tech. & the Law of the S. Comm. on the Judiciary*, 112th Cong. 1 (2012) (available at https://www.eff.org/files/filenode/jenniferlynch_eff-senate-testimony-face_recognition.pdf).

[4] *Id.*

[5] *Facing Facts: Best Practices for Common Uses of Facial Recognition Technologies*, Federal Trade Commission (Oct. 2012), *available at* http://www.ftc.gov/sites/default/files/documents/reports/facing-facts-best-practices-common-uses-facial-recognition-technologies/121022facialtechrpt.pdf.

493424.1

technology.  Not only do Defendants' actions fly in the face of FCC guidelines, they also violate

the privacy rights of Illinois residents.

## II.     Illinois's Biometric Information Privacy Act

16.     In 2008, Illinois enacted the BIPA due to the "very serious need [for] protections

for the citizens of Illinois when it [comes to their] biometric information."  Illinois House

Transcript, 2008 Reg. Sess. No. 276.  The BIPA makes it unlawful for a company to, *inter alia*,

"collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's

biometric identifiers[6] or biometric information, unless it first:

> (1) informs the subject . . . in writing that a biometric identifier or
> biometric information is being collected or stored;
> (2) informs the subject . . . in writing of the specific purpose and
> length of term for which a biometric identifier or biometric
> information is being collected, stored, and used; and
> (3) receives a written release executed by the subject of the biometric
> identifier or biometric information or the subject's legally authorized
> representative."

740 ILCS 14/15 (b).

17.     Section 15(a) of the BIPA also provides:

> A private entity in possession of biometric identifiers or biometric
> information must develop a written policy, made available to the
> public, establishing a retention schedule and guidelines for
> permanently destroying biometric identifiers and biometric
> information when the initial purpose for collecting or obtaining such
> identifiers or information has been satisfied or within 3 years of the
> individual's last interaction with the private entity, whichever occurs
> first.

740 ILCS 14/15(a).

18.     As alleged below, Defendants' practices of collecting, storing and using unwitting

non-users' biometric identifiers and information without informed written consent violate all three

---

[6] The BIPA's definition of "biometric identifier" expressly includes information collected about
the geometry of the face (*i.e.*, facial data obtained through facial recognition technology).  *See* 740
ILCS 14/10.

prongs of §15(b) of the BIPA. Defendants' failure to provide a publicly available written policy regarding their schedule and guidelines for the retention and permanent destruction of their non-users' biometric information also violates §15(a) of the BIPA.

## III.  Defendants Violate the Biometric Information Privacy Act

19.     In a slideshow released by Shutterfly to accompany its Q2 2013 earnings conference call, Shutterfly claimed that, as of mid-2013, its users store "~20 billion photos" in the company's photo database, and that its facial recognition technology identifies people appearing in those photos by way of "photo ranking algorithms" and "advanced image analysis."[7] Shutterfly's website further explains that its ThisLife photo storage and sharing platform "make[s] face tagging quick and easy with our facial recognition [technology],"[8] which "automatically recognizes faces (even babies and kids!) and puts them in groups to make it fast and easy for you to tag."[9]

20.     Unbeknownst to the average consumer, and in direct violation of § 15(b)(1) of the BIPA, Defendants' proprietary facial recognition technology scans every user-uploaded photo for faces, extracts geometric data relating to the unique points and contours (*i.e.,* biometric identifiers) of each face, and then uses that data to create and store a template of each face – all without ever informing anyone of this practice.

21.     Shutterfly holds several patents covering its facial recognition technology that detail its illegal process of scanning photos for biometric identifiers and storing face templates in its database without obtaining informed written consent.

---

[7] *See* http://files.shareholder.com/downloads/SHUT/267971935x0x681010/36F643F1-5FC2-4E47-BFE3-AB8BBF7A91DE/Q2FY13_Earnings_Presentation.pdf (last visited June 12, 2015).

[8] *See* http://blog.thislife.com/post/65531549805/introducing-the-new-thislife-r-by-shutterfly (last visited June 12, 2015).

[9] *See* https://www.thislife.com/#features (last visited June 12, 2015).

22.     The "tag suggestion" feature of ThisLife – which prompts a user to "tag" a pre-selected name to a particular face – works by comparing the face templates of individuals who appear in newly-uploaded photos with the facial templates already saved in Defendants' face database. Specifically, when a Shutterfly or ThisLife user uploads a new photo, Defendants' sophisticated facial recognition technology creates a template for each face depicted therein, without consideration for whether a particular face belongs to a Shutterfly user or unwitting non-user, and then compares each template against Defendants' face template database. If no match is found, the user is prompted to "tag" (*i.e.*, identify by name) a person to that face, at which point the face template and corresponding name identification are saved in Defendants' face database. However, if a face template is generated that matches a face template already in Defendants' face database, then ThisLife suggests that the user "tag" to that face the name already associated with that face.

23.     These unique biometric identifiers are not only collected and used by Defendants to identify individuals by name, but also to recognize their gender, age, race and location. Accordingly, Defendants also collect "biometric information" from non-users. *See* 740 ILCS 14/10.

24.     In direct violation of § 15(b)(2) and 15(b)(3) of the BIPA, Defendants never informed unwitting non-users tagged by their users of the specific purpose and length of term for which their biometric identifiers or information would be collected, stored and used, nor did Defendants obtain a written release from any of these individuals.

25.     In direct violation of § 15(a) of the BIPA, Defendants do not have written, publicly available policies identifying their retention schedules, or guidelines for permanently destroying non-users' biometric identifiers or information.

8

**IV.    Plaintiff Brian Norberg's Experiences**

26.     Plaintiff does not have a Shutterfly or ThisLife account and has never used Shutterfly or ThisLife.

27.     In or about February 2015, a Shutterfly user uploaded at least one (1) photo of Plaintiff to Shutterfly in the course of creating a wedding invitation.

28.     Upon upload of the photo(s) of Plaintiff in February 2015, Shutterfly automatically scanned and analyzed Plaintiff's face, extracted his biometric identifiers (such as geometric data relating to the unique contours of his face and the distances between his eyes, nose and ears), and then used those biometric identifiers to create a template of his face.

29.     On or about June 7, 2015, the same Shutterfly user uploaded approximately ten (10) more photos of Plaintiff to Shutterfly's ThisLife service.

30.     Upon upload of the first photo of Plaintiff to ThisLife, Shutterfly automatically scanned and analyzed Plaintiff's face, extracted his biometric identifiers (such as geometric data relating to the unique contours of his face and the distances between his eyes, nose and ears), and then used those biometric identifiers to create a template of his face.

31.     Shutterfly then prompted the Shutterfly user who uploaded these photos to ThisLife to "tag" Plaintiff's face, at which point the user tagged the name "Brian Norberg" to Plaintiff's face in the first photo.  Plaintiff's face template was then associated with the name "Brian Norberg" and stored in Defendants' face template database.

32.     The face templates created and stored from Plaintiff's biometric identifiers were also used by Shutterfly to recognize Plaintiff's gender, age, race and location.

33.     For each subsequent photo of Plaintiff uploaded to ThisLife by the Shutterfly user, ThisLife (1) created a face template using Plaintiff's biometric identifiers; (2) compared that face template to the previous face templates stored in Defendants' face template database, and (3)

suggested that the ThisLife user "tag" Plaintiff's face with the name "Brian Norberg". At the suggestion of ThisLife, the Shutterfly user tagged the name Brian Norberg to each such photo.

34.     Plaintiff never consented, agreed or gave permission – written or otherwise – to either Defendant for the collection or storage of the biometrics identifiers or biometric information associated with his face template.

35.     Further, Defendants never provided Plaintiff with nor did he ever sign a written release allowing Defendants to collect or store the biometric identifiers or biometric information associated with his face template.

36.     Likewise, Defendants never provided Plaintiff with an opportunity to prohibit or prevent the collection, storage or use of the biometric identifiers associated with his face template.

37.     Nevertheless, when a Shutterfly user uploaded photos of Plaintiff to ThisLife, ThisLife scanned those photos, located his face, determined who he was based on his biometric identifiers, and created and assigned to him a unique face template, which Defendants associated with Plaintiff's name and subsequently stored in their face template database.

## CLASS ALLEGATIONS

38.     **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All non Shutterfly users who, while residing in the State of Illinois, had their biometric identifiers, including "face templates" (or "face prints"), collected, captured, received, or otherwise obtained by Shutterfly.

The following are excluded from the Class: (1) any Judge presiding over this action and members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which a Defendant or its parent has a controlling interest (as well as current or former employees, officers and directors); (3) persons who properly execute and file a timely request for

exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on

the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal

representatives, successors, and assigns of any such excluded persons.

39.  **Numerosity**: The number of persons within the Class is substantial, believed to

amount to thousands of persons. It is, therefore, impractical to join each member of the Class as a

named Plaintiff. Further, the size and relatively modest value of the claims of the individual

members of the Class renders joinder impractical. Accordingly, utilization of the class action

mechanism is the most economically feasible means of determining and adjudicating the merits of

this litigation.

40.  **Commonality and Predominance**: There are well defined common questions of

fact and law that exist as to all members of the Class and that predominate over any questions

affecting only individual members of the Class. These common legal and factual questions, which

do not vary from Class member to Class member, and which may be determined without

reference to the individual circumstances of any class member include, but are not limited to, the

following:

(a)  whether Defendants collected or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

(b)  whether Defendants properly informed Plaintiff and the Class that they collected, used, and stored their biometric identifiers or biometric information;

(c)  whether Defendants obtained a written release (as defined in 740 ILCS 1410) to collect, use, and store Plaintiff's and the Class's biometrics identifiers or biometric information;

(d)  whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometrics information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;

(e)  whether Defendants used Plaintiff's and the Class's biometric identifiers or biometric information to identify them; and

11

(f)  whether Defendants' violations of the BIPA were committed intentionally, recklessly, or negligently.

41.  **Adequate Representation**: Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this class action. Neither Plaintiff nor his counsel has any interest adverse to, or in conflict with, the interests of the absent members of the Class.  Plaintiff is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

42.  **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the BIPA.

493424.1

## FIRST CAUSE OF ACTION
### Violation of 740 ILCS 14/1, *et seq.*
### (On Behalf of Plaintiff and the Class)

43.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

44.     The BIPA makes it unlawful for any private entity to, among other things, "collect,
capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric
identifiers or biometric information, unless it first: (1) informs the subject . . . in writing that a
biometric identifier or biometric information is being collected or stored; (2) informs the subject
. . . in writing of the specific purpose and length of term for which a biometric identifier or
biometric information is being collected, stored, and used; and (3) receives a written release
executed by the subject of the biometric identifier or biometric information . . . .   740 ILCS
14/15(b) (emphasis added).

45.     Shutterfly and ThisLife are Delaware corporations and thus qualify as "private
entities" under the BIPA.  *See* 740 ILCS 14/10.

46.     Plaintiff and the Class members are individuals who had their "biometric
identifiers" collected and stored by Defendants' facial recognition software (in the form of their
facial geometries extracted from uploaded digital photographs).  *See* 740 ILCS 14/10.

47.     Plaintiff and the Class members are individuals who had their "biometric
information" collected by Defendants (in the form of their gender, age, race and location) through
Defendants' collection and use of their "biometric identifiers".

48.     Defendants systematically and automatically collected, used, and stored Plaintiff's
and the Class members' biometric identifiers and/or biometric information without first obtaining
the written release required by 740 ILCS 14/15(b)(3).

49.     In fact, Defendants failed to properly inform Plaintiff or the class in writing that
their biometric identifiers and/or biometric information was being collected and stored, nor did

they inform Plaintiff and the Class members in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information was being collected, stored, and used, as required by 740 ILCS 14/15(b)(1)-(2).

50.     In addition, Defendants do not publicly provide a retention schedule or guidelines for permanently destroying the biometric identifiers and/or biometric information of Plaintiff or the Class members, as required by the BIPA. *See* 740 ILCS 14/15(a).

51.     By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, the Defendants violated the right of Plaintiff and each Class member to keep private these biometric identifiers and biometric information, as set forth in the BIPA, 740 ILCS 14/1, *et seq.*

52.     On behalf of himself and the proposed Class members, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) statutory damages of $5,000.00 for the intentional and reckless violation of the BIPA pursuant to 740 ILCS 14/20 (2), or alternatively, statutory damages of $1,000.00 pursuant to 740 ILCS 14/20(1) if the Court finds that Defendants' violations were negligent; and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brian Norberg, on behalf of himself and the proposed Class, respectfully requests that this Court enter an Order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing his counsel as Class Counsel;

493424.1

B.      Declaring that Defendants' actions, as set out above, violate the BIPA, 740 ILCS l4/1, *et seq.*;

C.      Awarding statutory damages of $5,000.00 for each and every intentional and reckless violation of the BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000.00 pursuant to 740 ILCS 14/20(1) if the Court finds that Defendants' violations were negligent;

D.      Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an order requiring Defendants to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

E.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.      Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

53.      Plaintiff demands a trial by jury for all issues so triable.


Dated:  June 17, 2015                              Respectfully submitted,

                                                   By: /s/  Katrina Carroll
                                                       Katrina Carroll
                                                       *kcarroll@litedepalma.com*
                                                       Kyle A. Shamberg
                                                       *kshamberg@litedepalma.com*
                                                       **Lite DePalma Greenberg, LLC**
                                                       Chicago Office
                                                       211 West Wacker Drive
                                                       Suite 500
                                                       Chicago, IL 60606
                                                       312.750.1265

15

493424.1

**CAREY RODRIGUEZ O'KEEFE
MILIAN GONYA, LLP**
David P. Milian*
dmilian@careyrodriguez.com
Frank S. Hedin*
fhedin@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile:  (305) 372-7475
*Pro Hac Vice Application Forthcoming*

***Counsel for Plaintiff and the Putative Class***

16

493424.1