UNITED STATES DISTRICT COURT

NORTHERN DISTRICT ILLINOIS

| | |
|---|---|
| BRIAN NORBERG, on behalf of himself and all others similarly situated,<br><br>                  Plaintiff,<br><br>    vs.<br><br>SHUTTERFLY, INC.; and THISLIFE.COM, INC.,<br><br>                  Defendants. | No. 1:15-cv-05351<br><br>The Honorable Charles R. Norgle, Sr.<br><br>Magistrate Judge Daniel G. Martin |

## **DEFENDANTS' MOTION TO DISMISS**

Defendants Shutterfly, Inc. and ThisLife ("Defendants"), by and through their counsel, move to dismiss the class action complaint of Plaintiff Brian Norberg ("Plaintiff") pursuant to Rules 12(b)(6) and 12(b)(2) of the Federal Rules of Civil Procedure. In support of this motion, Defendants state as follows:

1. The complaint's claim under the Illinois Biometric Information Privacy Act fails because the Plaintiff claims the Defendants violated the Act by extracting biometric identifiers from photographs but the Act specifically excludes from its dictates photographs.

2. This court does not have personal jurisdiction over Defendants in this matter because they are not incorporated in or have their principal places of business in Illinois, nor do Plaintiff's claims do no arise out of Defendants' contacts with the jurisdiction.

3. Defendants set forth in detail the bases for this motion in the supporting memorandum filed concurrently with this motion, which is incorporated herein.

**WHEREFORE,** Defendants respectfully request that this Court dismiss with prejudice Brian Norberg's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(2).

Dated:  July 31, 2015                                    Respectfully submitted,

                                                         By: /s/ Robert F. Huff
                                                            Robert F. Huff (ID No. 6225211)
                                                            ZWILLGEN PLLC
                                                            300 N LaSalle St, 49th Floor
                                                            Chicago, IL  60654
                                                            bart@zwillgen.com
                                                            Telephone: (312) 685-2278

                                                           /s/ Marc J. Zwillinger
                                                           Marc J. Zwillinger (ID No. 6226447)
                                                           ZWILLGEN PLLC
                                                           1900 M Street, NW, Suite 250
                                                           Washington, DC 20036
                                                           marc@zwillgen.com
                                                           Telephone:  (202) 296-3585
                                                           Facsimile:  (202) 706-5298

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2015, I authorized the electronic filing of the foregoing document, Defendants' Motion to Dismiss, with the Clerk of the Court using the CM/ECF system to be served on the parties by electronic transmission. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 31st, 2015.

                **ZWILLGEN PLLC**

          By: /s/ Robert F. Huff
              Robert F. Huff (ID No. 6225211)
              ZwillGen PLLC
              300 N LaSalle St, 49th Floor
              Chicago, IL 60654
              bart@zwillgen.com
              Telephone: (312) 685-2278

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT ILLINOIS

| | |
|---|---|
| BRIAN NORBERG, on behalf of himself and all others similarly situated, | No. 1:15-cv-05351 |
| Plaintiff, | The Honorable Charles R. Norgle, Sr. |
| vs. | Magistrate Judge Daniel G. Martin |
| SHUTTERFLY, INC.; and THISLIFE.COM, INC., | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**I.     PRELIMINARY STATEMENT**

This is a simple case.  Plaintiff alleges that Shutterfly has violated the Illinois Biometric Information Privacy Act (BIPA) by extracting information from photographs that users have uploaded and tagged with their friends' names to assist them in automatically identifying those same friends in other pictures.  **But the BIPA clearly and unequivocally states that photographs – and any information derived from photographs – are not within the scope of the law**.  Accordingly, there can be no BIPA violation here, and the case should be dismissed with prejudice.

Defendants' services allow users to upload and securely store their digital photographs. ThisLife offers a photo storage solution that provides users with easy access to all of their digital photos and offers several ways for users to organize their photos.  One way is to organize photos by person.  If a user identifies family and friends in photos, they can choose (but are not required) to input an identifier for the person in the photo (commonly referred to as "tagging") so

1

that photos can be grouped by persons previously tagged. In this case, Plaintiff alleges that an unidentified Shutterfly and ThisLife user (who already knew Plaintiff) uploaded a photo of him and tagged it with the name "Brian Norberg." The complaint goes on to allege that when Plaintiff's friend uploaded more pictures of him, the user was asked whether these pictures should also be tagged with Plaintiff's name.

Helping a user re-identify his own friends within his own digital photo album does not violate any law, much less the BIPA. Photographs are ubiquitous; the BIPA specifically excludes photographs or information taken from photographs from its reach. The BIPA imposes obligations only on those entities that collect and store "biometric identifiers" and "biometric information." The statute defines a "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry" – information obtained from an in-person, physical scan of a person's actual eye, finger, voice, or face. 740 Ill. Comp. Stat. Ann. 14/10. And it expressly excludes photographs: "**[b]iometric identifiers do not include** writing samples, written signatures, **photographs**. . ." Because "photographs" are expressly excluded from the definition of biometric identifier, information gleaned from the photographs, of whatever kind, is also specifically excluded from the statute's coverage. *Id*. Because the language of the statute is clear, no further analysis is needed to dismiss this case.

Even if the plain language of the statute was not sufficiently clear, the underlying purpose of the law is to protect against different concerns than at issue here. The BIPA was enacted to protect information used for biometric-facilitated financial transactions and security screenings, which are not at issue in this case. 740 Ill. Comp. Stat. Ann. 14/5  Plaintiff does not allege that his "face template" was used for anything other than allowing his friend to group and tag his or her own photos or in any way used outside of Shutterfly or ThisLife. This convenience feature is

2

simply not the type of biometric-facilitated financial transaction or security screening BIPA is intended to cover; Plaintiff's attempt to broaden the statute's reach is completely contrary to the Illinois General Assembly's express findings and the legislative history of the BIPA.

The complaint also fails for the independent reason that Plaintiff fails to allege any facts establishing this Court's personal jurisdiction over either of the Defendants. Moreover, it is clear that Plaintiff cannot remedy this failure given that Illinois is not the Defendants' home and Plaintiff's claim is not premised on the use of Defendants' services in this state.

## II.     BACKGROUND - SHUTTERFLY AND THISLIFE

Shutterfly provides an online tool that allows its users to upload and store their digital photos in a centralized, easily accessible location. Users can also use Shutterfly and ThisLife to purchase personalized photo products and services. ThisLife offers users a unified solution to organize, store, and share digital photos across web and mobile devices.[1] ThisLife allows users to import their photos from all their digital devices, including smartphones, computers, and tablets, as well as from many photo sharing sites, such as Google, Facebook, Instagram, and Dropbox. Users can use the tools on ThisLife to organize their photos (by date, location, person, or custom tag), access photos from any device, and share their photos either with others on ThisLife or through other social media outlets.

ThisLife uses technology that recognizes when there is a face in a photo and puts photos it believes to be of the same face into groups, so a user can quickly and easily tag those photos as a group. Am. Compl. ¶ 19, June 23, 2015, ECF No. 6. Tagging faces is not required. A user must opt to tag the faces in their photos and then decide what tag to give that face. *Id.* ¶ 22. A tag can be a first name, nickname, or even a label (like "mom" or "son"). Once used, tags are saved in the system for later use by that same user. *Id.* If the user

---

[1] THISLIFE BY SHUTTERFLY, https://www.thislife.com/#feature (last visited July 27, 2015)

repeatedly uses the same tag for a face in their photos, ThisLife may subsequently suggest the same tag for what appears to be the same face. *Id*. The user must click to confirm any tag suggested. *See id.*

### III. PLAINTIFF'S CLAIM

#### A. Plaintiff's Experience with Shutterfly and ThisLife

Plaintiff has never used Defendants' services. Am. Compl. ¶¶ 7, 26. Instead, he alleges that in or about February 2015, an unidentified Shutterfly user (who must have known him well enough to identify him in pictures) uploaded "at least (1) one photo" of Plaintiff to Shutterfly when creating a wedding invitation. *Id*. ¶ 27. Plaintiff claims that when that photo was uploaded, Shutterfly "automatically scanned and analyzed [his] face," to extract "biometric identifiers" and then used those biometric identifiers to create a "template of his face." *Id*. ¶ 28. These identifiers were allegedly associated with Plaintiff because the unidentified Shutterfly user "tagged" the name "Brian Norberg" to Plaintiff's face in the picture. *Id*. ¶ 31. Plaintiff further alleges that on or about June 7, 2015, the same user uploaded "approximately ten (10) more photos" of him to ThisLife. *Id*. ¶ 29. Plaintiff claims that when the additional pictures were uploaded to ThisLife, Shutterfly "automatically scanned and analyzed Plaintiff's face" and compared this information with its "face template database" to suggest that the user "tag" the photo with the name "Brian Norberg." *Id*. ¶ 33. Plaintiff does not allege that any other user ever uploaded any photos of him to Shutterfly or ThisLife, tagged any photos of him on those services, or had the "tag" "Brian Norberg" suggested to them. Plaintiff does not allege that his "face template" was shared with anyone. And he does not allege that anything apart from a photo was used to create his "face template." In fact, Plaintiff's allegations make clear that any

4

"face template" was created from a photograph *and nothing more*.[2]

### B. The Illinois Biometric Information Privacy Act

The Illinois Biometric Information Privacy Act (BIPA) does not cover photographs or any data extracted from photographs. The law, which was enacted in 2008, created requirements for the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information. 740 Ill. Comp. Stat. Ann. 14/5(g). However, BIPA only applies to a "biometric identifier" or "biometric information" created from such an identifier. The statute makes clear what does (*and does not)* qualify as a "biometric identifier":

> [A] retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. **Biometric identifiers do not include** writing samples, written signatures, **photographs**, human biological samples used for valid scientific testing or screening, **demographic data**, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. . . .
>
> And "biometric information" is:
>
> [A]ny information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. **Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers**.

740 Ill. Comp. Stat. Ann. 14/10. BIPA therefore specifically excludes photographs from the definition of biometric identifier, and, therefore, any information captured based on a photograph is also excluded from the definition of biometric information. "Demographic information" is

---

[2] *See* Am. Compl ¶ 5 ("Defendants create these templates using sophisticated facial recognition technology that extracts and analyzes data from the points and contours of faces appearing in **photos** uploaded by their users."); Am. Compl ¶ 20 ("Defendants' proprietary facial recognition technology scans every user-uploaded **photo** for faces, extracts geometric data relating to the unique points and contours (i.e., biometric identifiers) of each face, and then uses that data to create and store a template of each face – all without ever informing anyone of this practice.") (emphases added); *see also* Am. Compl. ¶¶ 19, 21, 22, 28, 30, 46.

5

also excluded from the definition of biometric identifier and falls outside the scope of the BIPA. Demographics is commonly defined as "the qualities (such as age, sex, and income) of a specific group of people."[3]

## IV. PROCEDURAL HISTORY

Plaintiff filed a Class Action Complaint on June 17, 2015. *See* Class Action Compl., June 17, 2015, ECF No. 1.[4] Plaintiff filed a First Amended Class Action Complaint on June 23, 2015. *See* Am. Compl. Defendants were served with the operative complaint on June 24, 2015. The Complaint seeks to represent a class of: "All non-Shutterfly users who, while residing in the State of Illinois, had their biometric identifiers, including 'face templates' (or 'face prints'), collected, captured, received, or otherwise obtained by Shutterfly." Am. Compl. ¶ 38.

On July 2, 2015, Defendants filed an Agreed Motion to Extend Time for Response to First Amended Complaint. Defs.' Mot., July 2, 2015, ECF No. 15. The Court granted that agreed motion, (Minute Entry, July 9, 2015, ECF No. 24), and this current motion is filed under the revised schedule.

## V. ARGUMENT

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires factual allegations sufficient to "draw the reasonable inference that the

---

[3] *See, e.g.*, Merriam Webster, *available at* http://www.merriam-webster.com/dictionary/demographic (last visited July 6, 2015).

[4] Plaintiff also filed a Motion for Class Certification, but states that it was made to provide notice of Plaintiff's intent to seek class certification, and asks that the motion be continued "until Defendants have appeared and class discovery has been completed." Mot. Class Cert. ¶ 4, June, 17, 2015, ECF No. 4.

defendant is liable for the misconduct alleged." *Id.* Labels, conclusions and "formulaic recitation[s]" will not suffice. *Twombly*, 550 U.S. at 555.

In interpreting an Illinois law, this Court's role is to predict how the Illinois Supreme Court would interpret BIPA, although it has yet to do so. *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 615 (7th Cir. 2013) (our role in diversity action "is to predict how the state's highest court would answer the question if asked"). Like federal courts, Illinois courts look to the plain language of the statute and enforce that language when it is clear and unambiguous. *In re D.F.,* 208 Ill. 2d 223, 229 (2003); *see also Davis v. Toshiba Mach. Co., America,* 186 Ill. 2d 181, 185 (1999) ("When the language of a statute is clear, no resort is necessary to other tools of interpretation."); *Paszkowski v. Metro. Water Reclamation Dist*., 338 Ill. App. 3d 781, 784 (2003) ("When the plain language is clear and unambiguous, the legislative intent that is discernable from this language must prevail, and no resort to other tools of statutory construction is necessary."). The court may not, "under the guise of statutory interpretation," "rewrit[e] a statute in a manner inconsistent with its clear and unambiguous language." *People v. Pullen*, 192 Ill. 2d 36, 42 (2000).

### B. BIPA Does Not Apply to the Facial Recognition Technology at Issue Here.

#### 1. Photographs and Information Collected From Photographs Are Specifically Excluded by BIPA's Plain Language

BIPA does not apply to photographs or information taken from photographs. And this Court need look no further than the plain language of the statute to make this determination. The statutory language is clear and unambiguous, and the Court should enforce it as written.

BIPA imposes certain restrictions on entities that "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information." 740 Ill. Comp. Stat. Ann. 14/15(b). Those restrictions only apply to companies in

7

possession of a "biometric identifier" or "biometric information" based on a biometric identifier. The statute does not leave to the imagination what qualifies. "Biometric identifier" includes only "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry" – that is, a record from a physical, in-person scan of the individual's eye, finger, voice, or face. 740 Ill. Comp. Stat. Ann. 14/10. In addition to defining what qualifies as a biometric identifier, the legislature specifically and unequivocally excluded from the definition certain other sources of information, including "photographs." *Id*.

This exclusion is fatal to Plaintiff's claim, because he alleges nothing more than that Defendants scanned *photographs* to create a template of his face appearing in those photos. *See, e.g*., Am. Compl. ¶ 30 ("Upon upload of the first photo of Plaintiff to ThisLife, Shutterfly automatically scanned and analyzed Plaintiff's face, extracted his biometric identifiers (such as geometric data relating to the unique contours of his face and the distance between his eyes, nose and ears), and then used those biometric identifier to create a template of his face."); *see also* Am. Compl. ¶¶ 5, 20, 21, 28, 46. Ignoring the statutory definitions, Plaintiff asserts that "face geometry," regardless of source, is a "biometric identifier." *See, e.g*., Am. Compl., at 2 n.1. But the legislature did not draft the operative definition to exclude "photographs [*except if those photographs are used to analyze face geometry*]." It instead excluded photographs – period. And this Court should not revise this exclusion. *People v. Lewis*, 223 Ill.2d 393, 402 (2006) (stating that courts may "not add provisions that are not found in a statute" nor "depart from the plain statutory language by reading into the statute exceptions, limitations, or conditions that the legislature did not express").

Therefore, photographs and any information gleaned from photographs cannot be biometric identifiers. Nor can such information qualify as "biometric information" since that

8

definition expressly excludes "*information derived from items or procedures excluded under the definition of biometric identifiers*." 740 Ill. Comp. Stat. Ann. 14/10 (emphasis added). "Biometric information" therefore does not include any "information derived from [photographs]" including a "face template," or information regarding Plaintiff's age, gender, race or location.[5]

### 2. The Legislature Did Not Intend for BIPA to Apply to the Photo Scanning Practices Alleged Here.

Even if this Court were to look past the plain language of the definition of "biometric identifier" in BIPA – which it should not and need not do – excluding photographs from the statute's reach is necessary to comport with the expressed aim of the Act: safeguarding biometric-facilitated financial transactions and security screenings. 740 Ill. Comp. Stat. Ann. 14/5; *Gill v. Miller*, 94 Ill. 2d 52, 56 (1983) ("In ascertaining the legislature's intent we should consider the statute in its entirety, noting the subject it addresses and the legislature's apparent objective in enacting it."). The BIPA was passed to address the "growing" use of biometrics "in the business and security screening sectors" to streamline financial transactions and security screenings. 740 Ill. Comp. Stat. Ann. 14/5(a). The legislature noted that some national corporations had chosen Chicago as a pilot testing site for "biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 Ill. Comp. Stat. Ann. 14/5(b). While the legislature recognized the benefit of such technology, it also recognized that consumers "are wary of the use of biometrics when such information is tied to finances and other personal information," which could deter them from

---

[5] It is clear that the legislature did not intend to place information such as age, gender, and race within the scope of BIPA, as "demographic data" is specifically excluded from the definition of "biometric identifier." 740 Ill. Comp. Stat. Ann. 14/10; *see also supra* n.1. Since demographic data does not qualify as biometric identifiers, it cannot be brought under the statute as biometric information.

9

adopting biometric identifier-facilitated transactions in the absence of regulations covering such biometric information. 740 Ill. Comp. Stat. Ann. §§ 14/5(d), (e).

Scanning photos to allow users to organize their own photos is a far cry from the biometric-facilitated financial transactions and security screenings BIPA is aimed at – such as the use of finger-scanning technology at grocery stores, gas stations, or school cafeterias. 740 Ill. Comp. Stat. Ann. 14/5. In fact, BIPA was enacted in response to concerns over the security of information held in a fingerprint scan system where those scans had been used to verify consumer purchases.

> This Bill is especially important because one of the companies that has been piloted in Illinois, Pay By Touch, is the largest fingerprint scan system in Illinois and they have recently filed for bankruptcy and wholly stopped providing verification services in March of 2008. This pullout leaves thousands of customers from Albertson's, Cub Foods, Farm Fresh, Jewel Osco, Shell, and Sunflower Market wondering what will become of their biometric and financial data.

*See* H.R. TRAN., Reg Sess. No. 276, at 249 (2008) (statement of Rep. Kathy Ryg). Given this focus on information gathered in-person during a "biometric-facilitated financial transaction," the definitions of "biometric identifier and "biometric information" became much narrower as the bill moved toward passage. *Compare* the Biometric Information Privacy Act, S.B. 2400, § 10 (Feb. 14, 2008) (defining "biometric identifier" as "any indelible personal physical characteristic which can be used to uniquely identify an individual or pinpoint an individual at a particular place at a particular time. Examples of biometric identifiers include, but are not limited to iris or retinal scans, fingerprints, voiceprints, and records of hand or facial geometry. Biometric identifiers do not include writing samples, written signature, and photographs.") *and* Amendment to S.B. 2400, § 10 (Apr. 11, 2008) (defining "biometric identifier" similarly but including "records or scans of hand geometry, facial geometry, or facial recognition . . .") *with*

Amendment to S.B. 2400, § 10 (May 28, 2008) (as enacted).[6] Tellingly, the legislature specifically excluded "facial recognition" from the definition, although that phrase was included in earlier drafts, and limited the definition to "scans" of face geometry.

While there is little discussion of the bill in the legislative history, what is available (such as the above statement by Rep. Kathy Ryg) shows that the legislature was concerned with technologies that gather data based on in-person scans of actual humans – like finger print scanning technology – for use in financial transactions or security screenings, not scans of pixels in a photograph used to help individuals organize their online photo albums. It is inconsistent with both the plain language and the purpose of BIPA to apply it to the photo organizing practices alleged here.

### C. Plaintiff Has Not Sufficiently Alleged Any Facts Showing that This Court Has Personal Jurisdiction Over Defendants

Plaintiff has not made any attempt to meet his burden of showing that this Court has personal jurisdiction over Defendants.[7] A *prima facie* showing of personal jurisdiction must be based on either uncontroverted allegations in plaintiff's complaint or, where controverted by defendant, by evidence and specific facts set forth in the record. *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir. 1987).[8] But the Complaint contains absolutely no allegations that support a finding of general or specific jurisdiction against Defendants, nor could it be amended to do so.

---

[6] All amendments available online at http://www.ilga.gov/legislation/fulltext.asp?DocName=09500SB2400&GA=95&SessionId=51&DocTypeId=SB&LegID=36373&DocNum=2400&GAID=9&Session (last visited July 31, 2015).

[7] Courts sitting in diversity have personal jurisdiction to the extent that an Illinois court would. *Klump v. Duffus,* 71 F.3d 1368, 1371 (7th Cir. 1995). Illinois allows for personal jurisdiction to the extent authorized by the Fourteenth Amendment's due process clause, which merges the federal constitutional and state statutory inquiries. *Tamburo v. Dworkin,* 601 F.3d 693, 700 (7th Cir. 2010).

[8] Plaintiff cannot seek to amend his complaint by making new, unsupported allegations of jurisdiction in his response to this motion to dismiss. *Lapham–Hickey Steel Corp. v. A.G. Edwards Trust Co.,* No. 03 C 3282, 2003 WL 22324877, at *2–3 (N.D. Ill. Oct. 8, 2003).

11

As Defendants are neither incorporated in nor have their principal place of business in Illinois, they are not subject to general jurisdiction here. "General jurisdiction is 'all-purpose'; it exists only 'when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 697-98 (7th Cir. 2015) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2850-51 (2011)) (internal quotation marks and alteration omitted). As the Seventh Circuit recently noted:

> In recent years, the Supreme Court has clarified and, it is fair to say, raised the bar for this type of jurisdiction. Because general jurisdiction exists even with respect to conduct entirely unrelated to the forum state, the Court has emphasized that it should not lightly be found. Instead, as the quote above shows, general jurisdiction exists only when the organization is "essentially at home" in the forum State. *Goodyear,* 131 S.Ct. at 2851. Thus far, the Court has identified only two places where that condition will be met: the state of the corporation's principal place of business and the state of its incorporation. *Daimler,* 134 S. Ct. at 760. Any additional candidates would have to meet the stringent criteria laid out in *Goodyear* and *Daimler.* Those criteria require more than the "substantial, continuous, and systematic course of business" that was once thought to suffice. *Id.* at 760–61.

*Id.* at 698. Plaintiff's complaint does not, nor could it, make any allegations sufficient for general jurisdiction.

Specific jurisdiction, meanwhile, "refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Id*. But Plaintiff also fails to make any allegation in the complaint that his claim arises out of Defendants' contacts with Illinois. He does not even allege, for example, that the unidentified user who allegedly uploaded the subject photos of Plaintiff accessed Defendants' services in Illinois. Even if he did, that alone is not sufficient. *Richter v. INSTAR Enterprises Intl., Inc*., 594 F. Supp. 2d 1000, 1013 (N.D. Ill. 2009) (interactive website operator offering allegedly infringing goods on website accessible in Illinois did not demonstrate that defendant purposefully directed any infringing sales activities to

12

Illinois); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004) (noting danger that "[p]remising personal jurisdiction on the maintenance of a website without requiring some level of 'interactivity' between the defendant and consumers in the forum state would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country."). In fact, Plaintiff defines the putative class by the location of non-users, not according to the location where users accessed Defendants' services. Plaintiff therefore has failed to allege any connection between his claim and Defendants' contacts with Illinois. And given the nature of his allegations and class definition, it is clear that he could not remedy this failure.

## VI. CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint, *with prejudice*, as the deficiencies in Plaintiff's claim and class definition cannot be remedied by amendment.[9]

Dated: July 31, 2015                                Respectfully submitted,

                                                          By:     /s/ Robert F. Huff
                                                                     Robert F. Huff (ID No. 6225211)
                                                                     ZWILLGEN PLLC
                                                                     300 N LaSalle St, 49th Floor
                                                                     Chicago, IL 60654
                                                                     bart@zwillgen.com
                                                                     Telephone: (312) 685-2278

                                                                     /s/ Marc J. Zwillinger
                                                                     Marc J. Zwillinger (ID No. 6226447)
                                                                     ZWILLGEN PLLC
                                                                     1900 M Street, NW, Suite 250
                                                                     Washington, DC 20036
                                                                     marc@zwillgen.com
                                                                     Telephone: (202) 296-3585
                                                                     Facsimile: (202) 706-5298

---

[9] Amendment is futile when the insufficiency in a complaint cannot be remedied, and under such circumstances dismissal with prejudice is appropriate. *See, e.g.*, *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014); *Lengerich v Columbia College*, 633 F.Supp.2d 599, 609 (N.D. Ill. 2009) (J. Norgle).