## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT ILLINOIS

| | |
|---|---|
| BRIAN NORBERG, on behalf of himself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>SHUTTERFLY, INC.; and THISLIFE.COM, INC.,<br><br>　　　　　　　Defendants. | Civil Action No. 1:15-cv-05351<br><br>The Honorable Charles R. Norgle, Sr.<br><br>Magistrate Judge: Hon. Daniel G. Martin |

## **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**I.     INTRODUCTION**

Shutterfly users upload photographs to Shutterfly's website, allowing them to store the photos online and in the cloud, organize their pictures, and print merchandise with pictures of their friends and family. Those collections of photos cannot be the basis for liability under the Illinois Biometric Information Privacy Act ("BIPA"), because the law explicitly excludes photographs from its reach. The statute prohibits a private entity from collecting, capturing, purchasing or receiving through trade or otherwise obtaining "biometric identifiers" and "biometric information," without first taking certain steps. But Shutterfly <u>does not</u> collect, capture, purchase or receive through trade or otherwise obtain face scans, retina scans, fingerprints or voiceprints – the items covered by the BIPA; it collects everyday photographs that its users upload. And a photograph simply does not become a face scan or fingerprint even if someone can (or does) zoom in on the photo in sufficient detail to see someone's fingerprint or their "face geometry."

Plaintiff's opposition glosses over the determinative fact here: the BIPA contains a separate provision that addresses what happens when an entity derives biometric information from other data it has collected. The term "biometric information" addresses data derived or extracted from biometric identifiers. *See* 740 ILCS 14/10. Therefore, if data collected from analyzing photographs were to be covered by the law, it would be covered under the definition of "biometric information." But this provision, as acknowledged by Plaintiff, expressly excludes information derived from photographs. Even though Plaintiff admits that information extracted from photographs is not "biometric information," he claims that information extracted from photographs can separately be treated as a "biometric identifier," even though photographs are explicitly excluded from the BIPA. This is entirely nonsensical. That reading would entirely jettison the statutory exclusion of photographs. And, under his reading, a photographer who takes or is in possession of a photograph and who uses facial recognition software on his computer could be in violation of the statute as

1

well, as that small business would also be in possession of a "biometric identifier."

Plaintiff's reading is also inconsistent with the statutory mandate to provide notice and obtain consent from users at the time of collection. Shutterfly itself has no interaction with the third parties whose faces may appear in the pictures uploaded by its users, and has no knowledge of which third-parties may be Illinois residents, making it impossible for Shutterfly to comply with the BIPA requirement if the Act applies to its activities. *See* 740 ILCS 40/15(b). This further demonstrates that BIPA does not apply to the tagging activities at issue here. Applying BIPA here would have the consequence of precluding the ubiquitous and benign practice involved in this case – helping users tag, in their own online photo albums, their friends and loved ones. That is a far cry from the legislative concerns that animated the BIPA. Thus, Plaintiff fails to state a claim.

Plaintiff also fails to allege facts sufficient to show that it is appropriate for this Court to exercise personal jurisdiction over Defendants for his claim. That threshold requirement is also dispositive of this lawsuit. Plaintiff does not even argue—because he cannot in good faith—that Defendants are subject to general personal jurisdiction. But even the more limited category of specific jurisdiction requires that Defendants purposely exploit or in some way target the forum state's market and that the claim at issue arise from that conduct. Here there are no allegations that Defendants did anything to target or reach out to Illinois users, let alone that the alleged harm resulted from Defendants' presumed contacts with Illinois. Plaintiff has not even alleged that his photos were uploaded to Defendants' services by an Illinois user, or in Illinois. There is no connection between Plaintiff's claim and Illinois beyond Plaintiff's residence here. That residency is not enough. Because Plaintiff fails to provide any allegations showing that this Court can properly exercise personal jurisdiction over Defendants in this action, this case must be dismissed.

## II. ARGUMENT

### A. The BIPA Does Not Apply to the Technology at Issue Here.

#### 1. Plaintiff Ignores the Plain Language of the BIPA, Which Expressly Excludes Photographs and Any Information Derived from Photographs from the Act's Reach.

The language of the BIPA could not be clearer: photographs are not biometric identifiers, and information derived from photographs is not biometric information. 740 ILCS 14/10. While Plaintiff admits that the "face templates" at issue are not biometric information because they are derived from an "item" excluded from the definition of biometric identifiers (photographs), he nonetheless argues that the Court should ignore *that very same exclusion* when construing the definition of biometric identifier. He urges this Court to instead rely on the first sentence of that definition (specifically the phrase "scan…of face geometry") to find that "face templates" allegedly derived from photographs qualify as biometric identifiers. But Plaintiff cannot pluck out the portion of the statutory definition he finds beneficial to his claim and have the Court construe it in isolation. The principles of statutory interpretation do not allow it. In construing statutory language, words and phrases are not to be considered in isolation. Rather, the language in each section of the statute must be construed together and examined in light of the statute as a whole. *Carter v. SSC Odin Operating Co.,* 976 N.E. 2d 344, 355 (Ill. 2012).[1] Following these principles here, the Court must construe the defined terms biometric identifier (including the exclusions within that definition) and biometric information together, and within the context

---

[1] *See also People v. Zimmerman*, 942 N.E.2d 1228, 1232 (Ill. 2010) (same); *In re E.B., et. al.,* 899 N.E.2d 218, 222 (Ill. 2008) ("We construe the statute as a whole and cannot view words or phrases in isolation but, rather, must consider them in light of other relevant provisions of the statute."); *Sylvester v. Industrial Comm'n,* 756 N.E.2d 822, 827 (Ill. 2001) ("each word, clause and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous"); *Robbins v. Bd. of Trs. of City of Carbondale, Ill.*, 687 N.E.2d 39, 43 (Ill. 1997) ("[T]he intent of the legislature in enacting a statute must be determined by examining the entire statute and by construing each material part of the legislation together. A court should consider each part or section of a legislative act in connection with every other part or section, and not each part alone, in determining the purpose or intent of the legislature.") (emphasis in original) (internal citations omitted).

in which they appear. Doing so shows that Plaintiff's attempt to bring Defendants' conduct within the BIPA must fail.

The BIPA creates a dichotomy between biometric identifiers and information derived from those identifiers (biometric information). Biometric identifier is specifically defined under the BIPA to include only a limited set of information ("a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry"), excludes numerous items (most important to this case – photographs),[2] and does not include derivative information. 740 ILCS 14/10. Data derived from biometric identifiers is instead covered by a separately defined term: "biometric information." In fact, biometric information broadly covers "any information, regardless of how it is captured, converted, stored, or shared" that is "*based on* an individual's biometric identifier," but expressly does not reach information derived from "items or procedures" excluded from the definition of biometric identifier. *Id* (emphasis added). Since the "face templates" at issue are based on photographs uploaded by users, they can only fall under the BIPA's definition of biometric information. But Plaintiff concedes the alleged "face templates" are not biometric information because they are derived from "items" (photographs) excluded from the definition of biometric identifiers. (Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss ("Opp.") at 1, ECF. No. 29.)[3] The Court's inquiry should end here.

Despite this concession and in disregard of the statutory definitions, Plaintiff argues that biometric identifiers can include information derived from sources excluded from its

---

[2] Biometric identifier also expressly excludes demographic data, but Plaintiff argues that information "pertaining to gender, race and age" allegedly derived by Defendants – information that is clearly demographic data – should not be excluded because Defendants allegedly derived it from "face templates," not photographs. (Opp. at 4, n. 2). But the BIPA does not state that demographic data is excluded except if it is derived from, for example, an iris scan or other biometric identifier. Instead, it excludes demographic data altogether.

[3] Plaintiff's concession again demonstrates why his strained argument does not work. Since biometric information can only be derived from biometric identifiers, conceding that the "face templates" are not biometric information concedes that there was never any biometric identifier from which to derive biometric information.

4

very definition because that definition does not expressly *exclude* derivative information. But Plaintiff has it backwards. The definition does not *include* derivatives because derivatives are covered elsewhere – under the definition of biometric information. *McHenry County Defenders, Inc. v. City of Harvard*, 891 N.E.2d 1017, 1032 (Ill. App. 2d Dist. 2008) (under the statutory interpretation principle *inclusio unius est exclusio alterius,* "where a statute lists the thing or things to which it refers, the inference is that all omissions are exclusions, even in the absence of limiting language") (citations omitted). Information derived from excluded items (such as photographs) is, therefore, clearly not intended to be brought within the Act at all. It would make no sense to expressly exclude information derived from photographs under biometric information but find that such information is impliedly covered by the very definition that expressly excludes photographs from its reach. *Landis v. Marc Realty, L.L.C.*, 919 N.E.2d 300, 306 (Ill. 2009) (noting that statute should not be read "to lead to absurd, inconvenient, or unjust results"); *Sylvester*, 756 N.E.2d at 827 (statute must be construed as a whole and court must avoid a reading "which would render any portion of the statute meaningless or void") (citations omitted). The exclusion of photographs and information derived from photographs from the statute's reach clearly shows that Plaintiff's interpretation is flawed.

Plaintiff's reading of the BIPA is also entirely inconsistent with BIPA's compliance provisions which can only apply when data is collected directly from the data subject or their legally authorized representative (and not a photographer or friend). BIPA applies to entities that "collect, capture, purchase, receive through trade, or otherwise obtain" either a biometric identifier or biometric information. The BIPA does not prohibit such collection, but requires entities collecting such information to meet certain requirements *at the time of collection*. Specifically, the entity must provide notice that a biometric identifier or biometric information is being obtained, indicate the purpose of collection and how long the data will be stored, and obtain a written release "executed by the subject of the" information or their "legally authorized representative." 740 ILCS 14/15(b). An entity can only abide

5

by these compliance requirements when the biometric identifier or biometric information is collected directly from the subject. But, here, Plaintiff alleges that a biometric identifier was collected when an unknown user took a photograph of him, and at some later point uploaded it to Defendants' service and tagged the photo, which resulted in the creation of a "face template." In this context, the only person who has a relationship with the Plaintiff, and so could provide him with notice and obtain his consent, is the original photographer. Plaintiff's interpretation could therefore require any photographer who intends to later upload the photographs to a service using facial recognition technology to comply with the law. But the BIPA was expressly not intended to apply to photographs at all.

Plaintiff's claim that Defendants (not the persons that actually collected the photographs at issue) are the ones required to comply with the BIPA raises significant problems. Defendants have no contact with non-users who may be the subject of its users' photographs – they have no way of knowing who those non-users are or how to contact them. They also have no way to know if those non-users are Illinois residents.[4] Defendants, therefore, have no way to know whether they need to comply with the BIPA as to non-users, let alone a means to comply if required to do so. This illustrates why the BIPA only applies to the in-person collection of covered information directly from the data subject or her legally authorized representative. Any other interpretation renders the statute nonsensical as there is simply no means for complying. *Landis*, 919 N.E.2d at 306 (in construing a statute the court "must presume that the legislature did not intend absurd, inconvenient, or unjust results").

Post-collection compliance is not contemplated by the Act. Since the BIPA requires compliance at the time of collection, the determinative question here must be what

---

[4] Requiring Defendants to comply with the BIPA, on the mere possibility that some Illinois residents may be tagged by users, violates the principles of the dormant commerce clause. *See Healy v. The Beer Institute*, 491 U.S. 324, 335-36 (1989) (imposition of one state's laws on individuals in another state violates the commerce clause); *Quill Corp v. North Dakota*, 504 U.S. 298, 306-07 (1992) (same); *Midwest Title Loans v. Mills*, 593 F.3d 660, 664-65 (7th Cir. 2010) (same).

Defendants collect, capture, purchase, receive through trade or otherwise obtain from its users. And that is photographs. Nothing more. Shutterfly does not collect face scans, retina scans, fingerprints or voiceprints – the only items covered by the BIPA.[5]

### 2. Plaintiff's Reliance on Secondary Sources is Misplaced.

Plaintiff refers to several secondary sources – none of which are cited in his complaint – on the meaning of the term "biometrics." (Opp. at 8.) To begin with, it is improper to rely on materials outside the complaint.[6] Moreover, resort to external material is both unnecessary and improper because the statutory term is already defined clearly in the statute. In any event, Plaintiff's argument is misguided.

First, Plaintiff argues that the phrase biometric identifier "is a term of art that would generally be understood to exclude ordinary photographs but include technically-enhanced identifiers derived from photographs." (Opp. at 8.) But this misses the entire point. The legislature specifically excluded all photographs, period. 740 ILCS 14/10. If the legislature wanted to include some types of photographs, or some types of information derived from some types of photographs, they would have done so. Plaintiff's reading contradicts the explicit words of the statute.

Second, the legislature specifically defined "biometric identifier" and "biometric information." While "[i]t is appropriate to employ a dictionary to ascertain the meaning of an otherwise undefined word or phrase," *People v. Beachem,* 890 N.E.2d 515, 520 (Ill. 2008), it is not appropriate to look to the dictionary to define terms that the statute itself

---

[5] Moreover, if photographs can later be converted into covered materials, people receiving them would have no idea that they may later be subject to the statutory requirements of the BIPA years later when they simply upload them to the Internet or scan them to their personal computers. These people would have no way of knowing that the photographs they snapped on vacation are subject to the BIPA and that they must take certain actions to comply with the BIPA at that time. 740 ILCS 14/15(b).

[6] It is well-settled that matters outside the pleadings should not be considered on a motion to dismiss for failure to state a claim. Fed. R. Civ. Pro. 12(d); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1439-30 (7th Cir. 1996) (improper to consider matters outside the pleading in a Rule 12(b)(6) motion; doing so is reversible error).

defines, *Robbins*, 687 N.E.2d at 43 ("when an act defines its terms, those terms must be construed according to the definitions contained in the act"). Plaintiff cannot seek to replace the existing legislative definitions wholesale.[7]

Plaintiff also argues that applying the exclusion for photographs will swallow the rule because, he asserts, "every single one of [the] identifiers" identified in the BIPA "depends in the first instance on the capture of a photograph." (Opp. at 10.) This claim is false and unsupported; none of the other biometric identifiers included within the definition is taken, in the first instance, from a photograph. For example, a fingerprint is taken by "the application of special powders to visualize the image" of a fingerprint impression left behind on a physical surface, like a tabletop; the camera is only used to "preserve the image." (Opp. at 11, and source cited therein: Michael Cherry & Edward Imwinkelried, *A Cautionary Note About Fingerprint Analysis and Reliance on Digital Technology*, 89 Judicature 334 (2006).) A retinal scan is taken using a camera that "projects an infrared beam of light into your eyes" and then "using the reflection of the light from your retinas and choroids, the camera photographs the vasculature structure of your eyes." (Opp. at 11, and source cited therein: Stephen Hoffman, *Biometrics, Retinal Scanning, and the Right to Privacy in the 21st Century*, 22 Syracuse Sci. & Tech. L. Rep. 38 (2010).) The retinal scan is taken of the person's eye itself, using a special type of camera; it is not created by analyzing an existing photograph, such as a digital photograph a consumer takes of his friends and family. (*Id.* at 40, n. 4.) Each of these examples involves a process where the

---

[7] If anything, the Court should look to definitions of the terms that are undefined, such as the term "scan" within the phrase "scan of . . . face geometry." "Scan" has several meanings, but in this context the most relevant definition is: "an image formed by scanning something: as (a) a depiction (as a photograph) of the distribution of a radioactive material in something (as a bodily organ); or (b) an image of a bodily part produced (as by computer) by combining ultrasonic or radiographic data obtained from several angles or sections." (*See Scan*, MERRIAM-WEBSTER.COM, http://www.merriam-webster.com/dictionary/scan (last visited Sept. 15, 2015).) This definition shows that a scan of an organ or bodily part will require an in-person procedure to produce. It does not describe a "digital map[] of geometric points and measurements" created from a photograph. (Opp. at 4.)

biometric information is physically collected from the data subject *in person*. So, contrary to Plaintiffs' assertion, excluding photographs and information derived from photographs will not swallow the rule by removing all biometric identifiers from the statute's reach.

Finally, Plaintiff also relies on a misreading and misapplication of a Public Access Opinion issued by the Illinois Attorney General under the Freedom of Information Act ("FOIA"). (Opp. at 8.) That opinion was about whether photographs were biometric information under Illinois FOIA law, not the BIPA. (Disclosure of Photographs of Former Auxiliary Deputy Sheriff, Pub. Access Op. No. 14-008, 2014 WL 4407615, at *4 (Ill. A.G Aug. 19, 2014)). Nevertheless, in this opinion, the Attorney General concluded that the photographs sought under the FOIA could <u>not</u> be withheld as private "biometric identifiers" because, although "biometric identifiers" was not defined by the FOIA, the common understanding of the term shows that photographs do not qualify. *Id*. at *5. In doing so, the Attorney General pointed out that her decision is consistent with the BIPA, because the BIPA expressly excludes photographs from its definition of biometric identifiers. *Id*. at *2. This opinion letter therefore supports Defendants' position, not Plaintiff's.[8]

### 3. The Legislative Purpose of the BIPA Supports Excluding the Technology at Issue from Its Reach.

Contrary to Plaintiff's argument, Defendants are not seeking to use the legislative history to override the plain language of the statute. The language of the BIPA *plainly excludes* photographs and information derived from photographs from its reach. Accordingly examination of the legislative history is unnecessary – indeed improper. However, the legislative history and the statement of statutory purpose are both consistent with this plain language.[9]

---

[8] In addition, the portion Plaintiff cites does not, contrary to his assertion, contain a statement by the Attorney General. Instead, what Plaintiff quotes is the Attorney General citing to the "Frequently Asked Questions section of the Biometrics Institute Limited Website," which she found was not "unequivocal with regard to whether a general photograph of a subject should be considered a 'biometric identifier.'"

[9] Despite Plaintiff's arguing that the "legislative findings and legislative history only further

To the extent that the court examines legislative history, the intent of the legislature may be gleaned from the "reason and necessity for the act, the evils sought to be remedied, and the objects and purposes sought to be obtained." *In re Marriage of Antonich,* 499 N.E.2d 654, 656 (Ill. App. 2d Dist. 1986). "In short, the statutory 'text' must be placed within its 'context' to be properly understood." *Jordon v. Dominick's Fine Foods, et al.*, No. 10 C 407, 2015 WL 4498909, at *2 (N.D. Ill. July 23, 2015). Looking at the context of the BIPA shows why it cannot be applied to the conduct complained of here.

In enacting the BIPA, the Illinois legislature was concerned with the safety of biometric identifiers used in financial transactions and for security screenings. That such identifiers would be collected from consumers directly and in-person during such transactions is apparent from the statutory compliance requirements. Specifically, the requirement of notice and consent – *prior to collection* – can only be implemented when the biometric identifiers are collected directly from the subject. 740 ILCS 14/15(b). Notice and consent can easily be sought when a consumer choses to scan their fingerprint while paying at the grocery store, but there is no real way to obtain notice and consent from the unknown subjects in a photo uploaded by another person.

Further, biometric identifiers collected in such transactions would necessarily be tied to personal financial data or personal identifying information. A breach of a database of identifiers used to verify, for example, a payment at a grocery store, could potentially expose an identifier tied to the financial information that identifier accessed, and, as the legislature recognized, pose a real danger of identity theft. 740 ILCS 14/1(b). This is not the case here. Defendants' users upload photos and are given the option of applying "tags" to the people in those photos to help organize them. The tags are determined by the user and do not need to be the real or full name of the person – they can be as simple as "mom," "son," or "Mike" –

---

demonstrate that the intent of the BIPA is to regulate all collection of biometric identifiers, regardless of derivation (Opp. at 13), Plaintiff does not actually point to *any* legislative findings or history, let alone any findings or history supporting the conclusion he seeks to make.

10

identifiers that, without more, cannot be attributed to real people. Also, the tags are not linked to anything other than the photo of that tagged person – not, for example, to their identifying or financial information. The tags exist only within Shutterfly and ThisLife and only contain the user-generated label. There is simply not a situation where a breach of the Defendants' database of "face templates" would present the risk the legislature was concerned with: protecting biometric identifiers tied to financial data or personal identifying information. *See generally* 740 ILCS 14/1.[10]

### B. This Court Cannot Exercise Personal Jurisdiction over Defendants for This Claim.

Plaintiff's claim does not arise out of his purchase or use of Defendants' services. Instead it arises out of the alleged use of Defendants' services by an unidentified person (who may or may not be an Illinois resident, and who may or may not have used Defendants' websites in Illinois). But even if Plaintiff had included an allegation that an Illinois user uploaded the photos at issue while in Illinois, this would still not be enough. There are no allegations that Defendants *targeted or otherwise directed* their activities at Illinois. Having a generally-accessible website that allegedly causes harm in the forum is not sufficient.[11]

---

[10] Conversely, a breach of a database of photos connected to "face templates" poses the same risk as does a breach of a database of photos with tags but no "face templates" (which database would clearly be outside the scope of the Act). As Plaintiff points out, a database of "pre-labeled photographs" is the necessary foundation for facial recognition technology. (Opp. at 10.) And facial recognition software is publicly available and could be easily employed to those photos to identify the same photo subject within the population of photos. Therefore, including "face templates" derived from photograph within the Act does nothing to serve its legislative purpose.

[11] Whether this Court has personal jurisdiction over Defendants must be decided as a threshold matter. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101-02, (1998) ("For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires."); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (personal jurisdiction is "an essential element of the jurisdiction of a district ... court," without which the court is "powerless to proceed to an adjudication").

11

Specific personal jurisdiction[12] is only appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of or relates to the defendant's forum-related activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). On the first element, the Seventh Circuit notes: "in cases in which the defendant's alleged contacts with the forum state occurred online . . . the relevant inquiry typically 'boils down' to whether the defendant has purposely exploited or in some way targeted the forum state's market." *Telemedicine Solutions LLC v. WoundRight Technologies, LLC,* 27 F. Supp. 3d 883, 891–92 (N.D. Ill. 2014) (citing *be2 LLC v. Ivanov,* 642 F.3d 555 (7th Cir. 2011)). Thus, "[i]f the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be hauled into court in that state without offending the Constitution." *be2 LLC,* 642 F.3d at 559 ("Beyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way *target* the forum state's market" (emphasis in original).[13]

For example, when a website targets Illinois – such as by specifically identifying that state as one served or by offering in-person services in Illinois – that may indicate a willingness to do business in the state and thus meet the requirement of purposeful availment. *See, e.g.*, *Innovative Garage Door Co. v. High Ranking Domains, LLC*, 981 N.E.2d 488 (Ill. App. 2d Dist. 2012) (finding specific personal jurisdiction over internet lead-generation business since website offered quotes for professional services to be provided in Illinois to Illinois residents pursuant to a lead-referral contract website operator

---

[12] Plaintiff does not attempt to assert general personal jurisdiction over Defendants, and it is clear that he could not meet the requirements of doing so. (*See* Opening Brief, at 12, ECF No. 26.)

[13] *See also Illinois v. Hemi Grp., LLC,* 622 F.3d 754, 757-58 (7th Cir. 2010) ("Courts should be careful in resolving questions of personal jurisdiction involving online contacts to ensure that a defendant is not hauled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'").

entered with Illinois-based company); *Hemi Grp. LLC*, 622 F.3d at 758 (finding specific personal jurisdiction over website operator whose commercial website included pull-down menu allowing Illinois users to calculate shipping costs to Illinois where items had, in fact, been sold and shipped to consumers in Illinois).[14] But here Plaintiff does not allege that Defendants' websites target Illinois in any manner.

The complaint does not allege that Defendants aimed their services at Illinois residents, such as by advertising their services in Illinois (or, at all). There is not even an allegation that an Illinois resident uploaded the photos at issue here or that the photo was uploaded in Illinois. Plaintiff's only allegation regarding jurisdiction is that "Defendants conduct business transactions in this district" and that "[t]here *are likely* tens of thousands of individuals who, while residing in Illinois, had their photos uploaded to Shutterfly." (Complaint ¶¶ 10, 11, ECF No. 6 (emphasis added).) These allegations do not rise to the level required, and Plaintiff's argument in his opposition brief cannot remedy these deficiencies. *See, e.g., Turnock v. Cape*, 816 F.2d 332, 333 (7th Cir. 1987) (personal jurisdiction must be based on facts alleged in complaint or evidence presented in the record). Moreover, those argument do nothing more than ask this Court to assume that since some Illinois users *likely* accessed Defendants' services they also *likely* tagged photos of Illinois non-users. But the Court's jurisdiction cannot be based on assumption. *Id*.

Additionally, Plaintiff has failed to establish that his claim arises "out of the contacts between the defendant and the forum." *Spartan Motors, Inc. v. Lube Power, Inc.,* 786 N.E.2d 613, 618 (Ill. App. 2d Dist. 2003); *see also Telemedicine Solutions LLC,* 27 F. Supp. 3d at 899 ("[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful

---

[14] *Cf. be2 LLC*, 642 F.3d at 559 (finding no personal jurisdiction based on operation of nationwide dating application even though some persons with Illinois addresses created profiles on the application); *Anesthesiologist Chicago, LLC v. Anesthesia Assoc. of Houston Metroplex, P.A*., 623 F.3d 440, 446 (7th Cir. 2010) (maintaining a website accessible to residents of the forum state and alleging that defendant caused harm through that website insufficient to confer personal jurisdiction on website operator).

way.") (quoting *Walden v. Fiore,* __ U.S. __, 134 S.Ct. 1115 (2013)). This inquiry focuses on the defendant's forum-related conduct and whether it is tied to the claim at issue; that plaintiff resides in the forum is not sufficient. *Walden*, 134 S.Ct. at 1115 ("A forum State's exercise of jurisdiction over an out-of-state [defendant] must be based on intentional conduct by the defendant that creates the necessary contacts with the forum."). Without any allegation that the user who allegedly uploaded Plaintiff's photo to Shutterfly and ThisLife did so in Illinois because of Defendants' targeting of the Illinois market, there is simply no tie between Plaintiff's claim and Defendants' generally accessible websites.

Plaintiff relies heavily on *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421 (7th Cir. 2010), to support its argument that personal jurisdiction exists. But that case is distinguishable and does not help Plaintiff here.[15] As the *GoDaddy* court pointed out, the personal jurisdiction inquiry is not a mechanical test, but is necessarily fact-dependent. *Id.* at 430. There, the following facts were determinative: GoDaddy not only marketed its services nationwide but also put up physical billboards in several locations in Illinois, did significant business in that state, and even sold two of the domain names at issue (allegedly confusingly similar to uBid's domain) to Illinois consumers. *Id.* at 424, 427. Based on these facts, the court found that GoDaddy had purposefully directed its activities to Illinois and that the claims arose directly from its Illinois contacts. *Id.* at 431. This is a far cry from the current case, which contains no allegations that Defendants advertised their services, let alone targeted any advertising to Illinois users, and no allegation that Plaintiff's claim arises

---

[15] Plaintiff also cites several cases that pre-date the current approach of the Seventh Circuit, which is evidenced in a line of cases beginning with *Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010). *See Telemedicine Solutions LLC*, 27 F. Supp. 3d at 895 (discussing evolution of Seventh Circuit precedent in this area). Regardless, even these earlier cases are distinguishable. *See, e.g.*, *Varitalk LLC v. Lahoti*, Case No. 07 C 1771, 2007 WL 1576127, at * 6 (N.D. Ill May 30, 2007) (finding specific personal jurisdiction for trademark infringement claim where interactive website included links to shopping locations in Illinois and complaint alleged that Illinois users had accessed and been confused by defendant's website); *Valtech, LLC v. 18th Avenue Toys Ltd.*, Case No. 14 C 134, 2015 WL 603854, at *4 (N.D. Ill. Feb. 12, 2015) (complaint alleged direct sales into Illinois of products infringing on Illinois company's trade dress).

out of the use of Defendants' services in Illinois. *GoDaddy* simply does not help Plaintiff here.

## III. CONCLUSION

For the foregoing reasons, and those stated in Defendants' moving papers, this Court should dismiss the Complaint, *with prejudice*.

Respectfully Submitted,

By: /s/ *Robert F. Huff*
Robert F. Huff (SBN 6225211)
bart@zwillgen.com
ZWILLGEN PLLC
300 North La Salle Street, Suite 4925
Chicago, IL 60654
Telephone: (312) 685-2278

**ZWILLGEN PLLC**

By: /s/ *Marc J. Zwillinger*
Marc J. Zwillinger (SBN 6226447)
marc@zwillgen.com
ZWILLGEN PLLC
1900 M Street, NW
Suite 250
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile: (202) 706-5298

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2015, I authorized the electronic filing of the foregoing documents, **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS,** with the Clerk of the Court using the CM/ECF system to be served on the parties by electronic transmission.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 16, 2015.

**ZWILLGEN LAW LLP**

By: /s/ *Robert F. Huff*
Robert F. Huff (SBN 6225211)
bart@zwillgen.com
ZWILLGEN PLLC
300 North La Salle Street, Suite 4925
Chicago, IL 60654
Telephone: (312) 685-2278