UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN NORBERG, on behalf of himself and all others similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>SHUTTERFLY, INC. and THISLIFE.COM, INC.,<br><br>    *Defendants*. | Civil Case No. 15 C 05351<br><br>District Judge Charles R. Norgle, Sr.<br><br>Magistrate Judge Daniel G. Martin |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
<u>TO COMPEL ARBITRATION AND STAY LITIGATION</u>**

Lauren R. Goldman
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2647
lrgoldman@mayerbrown.com

Archis A. Parasharami
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3328
aparasharami@mayerbrown.com

Matthew Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
mprovance@mayerbrown.com

*Counsel for Defendants Shutterfly, Inc.
and ThisLife.com, Inc.*

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| BACKGROUND | | 2 |
| A. | Norberg's Spouse Agrees To Arbitrate | 2 |
| B. | Mr. Norberg Sues Shutterfly And ThisLife Based On Ms. Blatt's Use Of Shutterfly's And ThisLife's Services | 4 |
| C. | Shutterfly's Arbitration Provision Includes Features Designed To Make Arbitration Convenient For Consumers | 5 |
| ARGUMENT | | 6 |
| A. | The FAA Requires Enforcement Of Shutterfly's Arbitration Provision | 6 |
| | 1. Ms. Blatt Accepted The Arbitration Clause Contained In Shutterfly's Terms And Expressly Incorporated Into ThisLife's Terms | 7 |
| | 2. Mr. Norberg's Claims Are Covered By The Arbitration Agreement | 8 |
| B. | Mr. Norberg Is Equitably Estopped From Avoiding Ms. Blatt's Arbitration Agreement | 9 |
| | 1. Norberg's Claims Are Subject To Equitable Estoppel Because They Arise From Interdependent And Concerted Misconduct | 9 |
| | 2. This Court Should Reject The Fifth District's Approach To Equitable Estoppel And Instead Follow The Decisions Of Other Judges In This District That Apply The Majority Approach To Equitable Estoppel | 12 |
| C. | The FAA Requires A Stay Of This Action Pending Arbitration | 15 |
| CONCLUSION | | 15 |

This lawsuit arises out of a claim by plaintiff Brian Norberg that an unidentified Shutterfly user uploaded photographs of him to Shutterfly's website and the related ThisLife platform,[1] and that the user "tagged" those photos with Mr. Norberg's name, allegedly resulting in a violation of the Illinois Biometric Information Privacy Act ("BIPA"). An investigation into the circumstances of this case has revealed that the unidentified Shutterfly user is Megan Blatt, plaintiff Norberg's *then-fiancée and now-wife*.[2] Under the well-established doctrine of equitable estoppel, Mr. Norberg may not evade enforcement of Shutterfly's arbitration provision by concealing Ms. Blatt's identity in drafting his complaint while simultaneously deriving claims from her use of Shutterfly's services.

The facts give rise to a strong inference that Mr. Norberg and his now-wife acted in concert to generate the claims in this lawsuit. The complaint alleges that the photos at issue were added to ThisLife "on or around June 7, 2015" (Am. Compl. ¶ 29); Shutterfly's records reveal that Ms. Blatt added the photos at that time. The lawsuit was filed *only ten days later*, on June 17, 2015. It is highly unlikely that in ten days, Mr. Norberg (1) discovered an alleged violation of the BIPA and (2) hired a lawyer who then (3) drafted and filed a complaint. The most logical explanation is that the claims were already in the works *before* Ms. Blatt joined ThisLife, and that Ms. Blatt signed up for ThisLife and loaded the photos of her then-fiancé (now husband) in order to generate Mr. Norberg's claims under the BIPA.

That coordination has significant consequences for this litigation. When Ms. Blatt signed up for ThisLife, she accepted the Terms of Service for both ThisLife and Shutterfly, thereby agreeing to arbitrate, on an individual basis, all disputes relating to ThisLife's services and those

---

[1] For simplicity's sake, we refer to Shutterfly and its subsidiary ThisLife collectively as "Shutterfly," unless otherwise noted.

[2] We understand that since their marriage in October 2015, Ms. Blatt has taken Mr. Norberg's last name; in this motion, we continue to refer to Ms. Blatt by her maiden name.

of ThisLife's parent company, Shutterfly. By failing to disclose Ms. Blatt's identity and relationship to the plaintiff in the complaint, Mr. Norberg evidently sought to evade Ms. Blatt's arbitration agreement. But the doctrine of equitable estoppel—which the Supreme Court has recognized as one of the "traditional principles of state law allow[ing] a contract to be enforced by or against nonparties" (*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009))—exists precisely to prevent this kind of artful pleading around arbitration. Moreover, the doctrine applies when, as here, the nonsignatory to the arbitration agreement (Mr. Norberg) has engaged in "concerted and interdependent misconduct" with the signatory (Ms. Blatt)—the manufacturing of this lawsuit in a manner that seeks to circumvent an enforceable arbitration agreement.

Because Ms. Blatt's arbitration agreement is enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, and because Mr. Norberg is equitably estopped from avoiding his spouse's agreement, defendants respectfully move for an Order compelling Mr. Norberg to arbitrate his claims on an individual basis and staying the action pending the outcome.

## BACKGROUND

### A. Norberg's Spouse Agrees To Arbitrate.

According to Shutterfly's records, Megan Blatt has accounts with both Shutterfly and its wholly-owned subsidiary, ThisLife. Decl. of Erik Weitzman ¶ 6. She already had a Shutterfly account at the time she signed up for ThisLife on or about June 7, 2015. *Id*. To establish her ThisLife account using a desktop or laptop computer, Ms. Blatt was required to click an orange button that said "Start Using ThisLife." That button appeared above the following sentence of text: "By using ThisLife, you agree to the Terms of ThisLife." *Id.* ¶ 7 & Ex. 2.[3] The word

---

[3] If Ms. Blatt happened to register for ThisLife using a mobile device, she still would have been presented with a screen informing her that by registering for an account with ThisLife she was agreeing to ThisLife's Terms of Service, and she would have been required to click a button indicating her assent to ThisLife's Terms of Service. *See id.* ¶ 8 & Exs. 3-5.

"Terms" was a hyperlink to ThisLife's Terms of Service. *Id.* The very first section of that document stated, under the bold heading "**Acceptance of Terms of Service**," that Ms. Blatt was accepting *both* ThisLife's Terms and Shutterfly's Terms:

> These Terms of Service, together with Shutterfly's Privacy Policy and Terms and Conditions ('**Terms of Service**' or the '**Terms**') govern your use of our service, including all of its features and functionalities, its website, mobile, desktop, tablet, and other applications, and all of its associated content and software (the '**Service**'). By using, visiting, or browsing the Service, you accept and agree to be bound by these Terms. If you do not agree to these Terms, you should not use the Service.

*Id.* Ex. 6 § 1 (hyperlinks and boldface in original). The ThisLife Terms further stated in boldface that "**Any dispute or claim arising from or relating to these Terms or the Service is subject to the disclaimer of warranty, limitation of liability, governing law and all other terms in Shutterfly's Terms and Conditions.**" *Id.* Ex. 6 § 11.

Shutterfly's Terms include an arbitration provision. The first page of the Shutterfly Terms in effect in June 2015 stated in all capital letters: "NOTE: THIS TERMS OF USE CONTAINS AN ARBITRATION AND CLASS ACTION WAIVER PROVISION IN THE 'ARBITRATION' SECTION BELOW THAT AFFECTS YOUR RIGHTS UNDER THIS TERMS OF USE AND WITH RESPECT TO ANY DISPUTE BETWEEN YOU AND US AND OUR AFFILIATES." *Id.* Ex. 7 at 1. The arbitration clause stated that "you and Shutterfly agree that any dispute, claim or controversy arising out of or relating in any way to the Shutterfly service, these Terms of Use and this Arbitration Agreement, shall be determined by binding arbitration." *Id.* Ex. 7 § 20. It went on: "you and Shutterfly are each waiving the right to a trial by jury or to participate in a class action," and reiterated that "YOU AND SHUTTERFLY AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." *Id.* Ex. 7 § 20.

### B. Mr. Norberg Sues Shutterfly And ThisLife Based On Ms. Blatt's Use Of Shutterfly's And ThisLife's Services.

The claims in this case originate directly from Ms. Blatt's use of Shutterfly's and ThisLife's services. Mr. Norberg alleges that "[i]n or about February 2015, a Shutterfly user uploaded at least one (1) photo of [Mr. Norberg] to Shutterfly in the course of creating a wedding invitation." Am. Compl. ¶ 27.[4] This "wedding invitation" was surely Mr. Norberg's own: he and Ms. Blatt were married in October 2015. Weitzman Decl. Ex. 1. Their wedding website indicates that Frank Hedin, one of Mr. Norberg's counsel in this case, is a long-time friend of Mr. Norberg and served as one of his groomsmen in the wedding. *Id.* Ex. 1 at 11-12.[5]

The complaint further alleges that "[o]n or about June 7, 2015, the same Shutterfly user uploaded approximately ten (10) more photos of [Mr. Norberg] to Shutterfly's ThisLife service." Am. Compl. ¶ 29. This "Shutterfly user" is never identified by name. *Id.* ¶ 27; *see also id.*

---

[4] Shutterfly and ThisLife's user activity records indicate that all of the photographs of Mr. Norberg that were uploaded to Ms. Blatt's account no earlier than June 7, 2015; some of those photographs were assigned dates in February 2015. Weitzman Decl. ¶ 12.

[5] The website indicates that Mr. Norberg has "been friends with Frank [Hedin] since our early days at Marshall" (Weitzman Decl. Ex. 1 at 11), a private "college-preparatory" school based in Duluth, Minnesota (http://www.marshallschool.org/page.cfm?p=10), which is Mr. Norberg's hometown (Weitzman Decl. Ex. 1 at 2). Thus, if this case were not compelled to arbitration, it is clear that the long-standing relationship between Mr. Norberg and his counsel casts substantial doubt on plaintiff's adequacy to serve as a class representative under Federal Rule of Civil Procedure 23(a)(4) as well as counsel's adequacy to serve as class counsel under Rule 23(g). The "long-standing personal friendship" between named plaintiff and class counsel "creates a present conflict of interest—an incentive for [plaintiff] to place the interests of [class counsel] above those of the class." *London v. Wal-Mart Stores*, 340 F.3d 1246, 1255 (11th Cir. 2003) (emphasis omitted) (holding that named plaintiff (who also had previously served as class counsel's stockbroker) was not an adequate class representative); *see also*, *e.g.*, *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014) (observing that "[t]here ought . . . to be a genuine arm's-length relationship between class counsel and the named plaintiffs" and "remind[ing] the class action bar of the importance of insisting that named plaintiffs be genuine fiduciaries, uninfluenced by family ties . . . *or friendships*") (emphasis added); *Eubank v. Pella Corp.*, 753 F.3d 718, 723-24 (7th Cir. 2014) (holding that district court should have rejected class settlement because "lead class counsel [was] the son-in-law of the lead class representative"; such a relationship "created a grave conflict of interest").

¶¶ 29, 31, 33, 37.[6]  Shutterfly's records strongly suggest that the unidentified user is Ms. Blatt, who both signed up for ThisLife and added multiple photographs of Mr. Norberg that are tagged with the name "Brian Norberg" on or about June 7, 2015.  Weitzman Decl. ¶¶ 6, 12-13 & Ex. 1.

The photos that Ms. Blatt added to ThisLife on or about June 7 are at the heart of the complaint.  Mr. Norberg alleges that when the photos were added, Shutterfly "scanned and analyzed [Norberg's] face" and created a "face template"; and that after the unidentified user had first tagged a photo with the name "Brian Norberg," Shutterfly then allegedly suggested that the user tag Mr. Norberg's name in photos that the user subsequently added.  Am. Compl. ¶¶ 30-33, 37.  Based on these allegations, Mr. Norberg contends that Shutterfly and ThisLife violated the BIPA (*id.* ¶¶ 43-52) and seeks to represent a putative class of "non Shutterfly users" (*id.* ¶ 38).

On June 17, 2015—just ten days after Ms. Blatt signed up for ThisLife and added the photos—Mr. Norberg's counsel (including Mr. Hedin) filed the complaint in this case, which states that it is based "on the investigation of his counsel and the advice and consultation of certain third-party agents as to technical matters."  Dkt. No. 1 at 1.  The operative and substantially similar first amended complaint was filed less than a week later.  Dkt. No. 6.

**C.     Shutterfly's Arbitration Provision Includes Features Designed To Make Arbitration Convenient For Consumers.**

As noted above, Shutterfly's Terms contain an arbitration provision.  That provision sets forth procedures that are tailored for the needs of consumers (Weitzman Decl. Ex. 7 § 20):

- **Cost-free arbitration**:  For claims of $10,000 or less, "Shutterfly will promptly reimburse you for your payment of the filing fee."  And under the AAA's Consumer

---

[6]     Mr. Norberg's failure to disclose his wife's role in this case continues to this day.  In support of his effort to strike Shutterfly's arbitration defense, he argues that this defense is "*theoretical*" and depends on whether "certain *hypothetical facts* can be established—such as the name of the user; the user's relationship to Norberg; whether the user signed an agreement to arbitrate; and whether Norberg agreed to be bound by somebody else's contract."  Dkt. No. 77 at 3 (emphasis in original).

5

> Arbitration Rules, Shutterfly is responsible for all of the other costs and fees of arbitration. Decl. of Daniel Jones Ex. 1 at 33.

- **$1,000 minimum award:** If the arbitrator issues an award in favor of a consumer that is greater than the "last written settlement offer made before an arbitrator was selected (or if Shutterfly did not make a settlement offer before an arbitrator was selected)," the consumer will receive $1,000 rather than any smaller arbitral award.

- **Choice of hearing:** For claims of $10,000 or less, the consumer has the exclusive right to choose whether the arbitrator will conduct an in-person or telephonic hearing, or a "desk" arbitration in which the "arbitration will be conducted solely on the basis of documents submitted to the arbitrator."

- **Convenient location:** The arbitration hearing will take place "in the county of [the consumer's] residence" unless the parties agree otherwise.

These features ensure that consumers have simple, fair, and cost-free procedures for pursuing their claims against Shutterfly and ThisLife.

## ARGUMENT

Shutterfly's Terms require Mr. Norberg to arbitrate his claims. That conclusion follows from two straightforward propositions: (1) the FAA requires enforcement of the arbitration agreement between Shutterfly and Mr. Norberg's spouse, Megan Blatt; and (2) principles of equitable estoppel prevent Mr. Norberg and Ms. Blatt from avoiding arbitration because they engaged in concerted misconduct by acting together to manufacture this lawsuit and concealing Ms. Blatt's role in order to circumvent her arbitration agreement.

### A. The FAA Requires Enforcement Of Shutterfly's Arbitration Provision.

The FAA applies to any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Both criteria are met here: the arbitration provision is in writing (*see* pages 2-3, *supra*), and the use of an online photo service involves interstate commerce—"courts have consistently found that use of the Internet necessarily involves interstate communications and therefore constitutes the use of a facility of interstate commerce." *Adams v. United States*, 2009 WL 2060089, at *6 (S.D. Ill. July 24, 2009)

6

(quotation marks omitted). Indeed, the arbitration provision specifies that the "[FAA] governs the interpretation and enforcement of this provision." Weitzman Decl. Ex. 7 § 20.

The Shutterfly arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). Section 2 of the FAA embodies a "liberal federal policy favoring arbitration agreements." *Id.* at 346 (internal quotation marks omitted). No grounds "exist at law or in equity for the revocation of" (9 U.S.C. § 2) Shutterfly's arbitration agreement. Ms. Blatt validly accepted that agreement when she signed up for ThisLife, and the arbitration provision is enforceable as a matter of state and federal law and covers the claims in this case.

1. **Ms. Blatt Accepted The Arbitration Clause Contained In Shutterfly's Terms And Expressly Incorporated Into ThisLife's Terms.**

When Ms. Blatt signed up for ThisLife in June 2015, she agreed to both ThisLife's Terms and Shutterfly's Terms, because ThisLife's Terms expressly incorporate Shutterfly's Terms by reference. Illinois recognizes the doctrine of incorporation by reference, which permits a contract to make terms in a separate document an enforceable part of the agreement.[7] "For a contract to incorporate all or part of another document by reference, the reference must show an intention to incorporate the document and make it part of the contract. If so incorporated, those additional provisions become *as much a part of the contract as if they were expressly written in it*." *Wilson v. Wilson*, 217 Ill. App. 3d 844, 853 (1991) (emphasis added) (citation omitted); *see also Westlake Fin. Grp., Inc. v. CDH-Delnor Health Sys.*, 25 N.E.3d 1166, 1172 (Ill. App. Ct.

---

[7] Illinois law governs the question of contract formation; courts "apply ordinary state-law principles that govern the formation of contracts" to determine whether a valid arbitration agreement was formed. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

2015) (same). And as to arbitration clauses specifically, Illinois courts have held that "a contract may incorporate by reference an arbitration provision contained in another document if the contract shows that intent." *Timmerman v. Grain Exchange, LLC*, 394 Ill. App. 3d 189, 195 (2009); *see also, e.g.*, *Ace Am. Ins. Co. v. Wendt, LLP*, 724 F. Supp. 2d 899, 902 (N.D. Ill. 2010) (enforcing terms of service provided on a website where a "purchase order clearly stated that the order was governed by the terms and conditions on [the] website").

The intent to incorporate Shutterfly's Terms is manifest. The first section of ThisLife's Terms expressly incorporates Shutterfly's Terms and provides a hyperlink: "These Terms of Service, together with Shutterfly's [Privacy Policy](#) and [Terms and Conditions](#) ('**Terms of Service**' or the '**Terms**') govern your use of our service, including all of its features and functionalities, its website, mobile, desktop, tablet, and other applications, and all of its associated content and software (the '**Service**')." Weitzman Decl. Ex. 6 § 1 (boldface and hyperlinks in original). As to dispute resolution, ThisLife's Terms state: "**Any dispute or claim arising from or relating to these Terms or the Service is subject to the . . . governing law and all other terms in Shutterfly's Terms and Conditions.**" *Id.* § 11 (boldface in original).

### 2. Mr. Norberg's Claims Are Covered By The Arbitration Agreement.

Mr. Norberg's claims are clearly within the scope of the arbitration provision, which encompasses "any dispute, claim or controversy arising out of or relating in any way to the Shutterfly service." Weitzman Decl. Ex. 7 § 20. Indeed, "[i]t would be hard to draft a broader [arbitration] clause." *Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 905 (7th Cir. 2004) (referring to provision requiring arbitration of "any claim or dispute . . . in any way relating to" the contract or the relationship between the parties). Mr. Norberg's claims plainly "relat[e] . . . to the Shutterfly service" for which Ms. Blatt contracted—they are based on Ms.

8

Blatt's uploading of photographs of Mr. Norberg to Shutterfly and its ThisLife service. *See* Am. Compl. ¶¶ 22, 27, 29, 30, 31, 33, 37. If there were any doubt—and there is none—it would have to be "resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

### B. Mr. Norberg Is Equitably Estopped From Avoiding Ms. Blatt's Arbitration Agreement.

The FAA establishes a strong federal policy favoring the enforcement of arbitration agreements. *Concepcion*, 563 U.S. at 346. In order to avoid a gaping hole in that policy, the Supreme Court has held that nonsignatories to arbitration agreements (like Mr. Norberg) may be bound by such agreements under certain circumstances. Such circumstances are present here.

#### 1. Norberg's Claims Are Subject To Equitable Estoppel Because They Arise From Interdependent And Concerted Misconduct.

In *Arthur Andersen v. Carlisle*, the Supreme Court explained that "'traditional principles' of state law allow" an arbitration agreement "to be enforced by *or against* nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and *estoppel*." 556 U.S. at 631 (emphases added) (citations and quotation marks omitted). Similarly, in the Seventh Circuit, "a nonsignatory may be bound by an arbitration agreement entered into by others" under certain "contract-based doctrines," including "estoppel." *Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 857 (7th Cir. 2015) (quotation marks omitted).

*Arthur Andersen* makes clear that the applicability of equitable estoppel is a question of state law—subject to the FAA's requirement that state law "place[] arbitration contracts on equal footing with all other contracts." *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015). Courts in this District have held that equitable estoppel applies in each of two circumstances:

First, equitable estoppel applies when the signatory must rely on the terms of the

9

> written agreement in asserting its claim against a non-signatory. Thus, when each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement and arbitration is appropriate. Second, equitable estoppel also applies when the signatory raises *allegations of substantially interdependent and concerted misconduct* by both the nonsignatory and one or more of the signatories to the contract.

*Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1004-05 (N.D. Ill. 2001) (quotation marks and citations omitted).[8] True, these cases generally involve a defendant who was *not* a party to an arbitration provision seeking to enforce that provision against a plaintiff who *was* a signatory. That is to be expected: those circumstances are far more common than the highly unusual machinations Mr. Norberg and Ms. Blatt have engaged in here. But the same principles apply to a nonsignatory plaintiff, because they "allow a contract to be enforced by *or against* nonparties." *Carlisle*, 556 U.S. at 631 (emphasis added). "[J]ust as estoppel can apply against a signatory to an arbitration clause who sues a nonsignatory thereto, *it can also apply against a nonsignatory who sues a signatory*." *Am. Bankers Ins. Grp. v. Long*, 453 F.3d 623, 628 (4th Cir. 2006) (emphasis added).

This case implicates the second circumstance identified in *Hoffman*: Equitable estoppel precludes a nonsignatory to an arbitration agreement (here, Mr. Norberg) from avoiding that agreement where the nonsignatory engages in "substantially interdependent and concerted misconduct" with a signatory (here, Ms. Blatt). *Hoffman*, 143 F. Supp. 2d at 1004-05; *accord, e.g.*, *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 527 (5th Cir. 2000)); *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395-96 (4th Cir. 2005); *Denney v. BDO Seidman,*

---

[8] *See also, e.g.*, *Sanchez v. CleanNet USA, Inc.*, 2015 WL 231450, at *7 (N.D. Ill. Jan. 15, 2015); *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 889 (N.D. Ill. 2014); *Field Sys. Machining, Inc. v. Vestas-American Wind Tech., Inc.*, 2013 WL 1943307, at *4 (N.D. Ill. May 9, 2013); *Levin v. NC12, Inc.*, 2011 WL 2582138, at *6 (N.D. Ill. June 29, 2011); *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 713 F. Supp. 2d 734, 745 (N.D. Ill. 2010); *Leff v. Deutsche Bank AG*, 2009 WL 1380819, at *5 (N.D. Ill. May 14, 2009); *Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876, 882 (N.D. Ill. 2006).

*L.L.P.*, 412 F.3d 58, 70 (2d Cir. 2005); *Holden v. Deloitte & Touche LLP*, 390 F. Supp. 2d 752, 765 (N.D. Ill. 2005). If this rule did not apply, then any arbitration clause "would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (discussing equitable estoppel).

"The linchpin for equitable estoppel is equity—fairness." *Grigson*, 210 F.3d at 528. If Ms. Blatt sought to bring a claim resulting from her use of Shutterfly's and ThisLife's services, she would be required to arbitrate them. A nonsignatory plaintiff like Mr. Norberg cannot seek to hold Shutterfly liable based on the very same use of Shutterfly's services by his wife and simultaneously "deny arbitration's applicability because [he] is a non-signatory." *Id.* That is especially inequitable when "'the relationship between the signatory and nonsignatory is sufficiently close,'" such that it is only by compelling arbitration that "'evisceration of the underlying arbitration agreement between the signatories [may] be avoided.'" *Hoffman*, 143 F. Supp. 2d at 1004. "[T]he doctrine of estoppel prevents a party from having it both ways." *Int'l Ins. Agency Servs., LLC v. Revios Reins. U.S., Inc.*, 2007 WL 951943, at *5 (N.D. Ill. Mar. 27, 2007) (compelling a nonsignatory plaintiff to arbitrate). In short, "a party may not use artful pleading to avoid arbitration." *Long*, 453 F.3d at 628.

The claims in this case strongly appear to be the product of "concerted misconduct" by Mr. Norberg and Ms. Blatt that was designed to generate a claim for this lawsuit and avoid a lawful arbitration agreement by concealing Ms. Blatt's identity. On or about June 7, 2015, Ms. Blatt signed up for ThisLife, accepted its Terms, and added the photos referenced in the complaint. The digital ink on those photos was barely dry when Mr. Norberg filed his complaint ten days later. It is vanishingly unlikely that in ten days, (1) Mr. Norberg learned of the uploads, and (2) hired a lawyer (his long-time friend Mr. Hedin), who (3) drafted and filed a complaint—

11

including the "investigation of [Norberg's] counsel and the advice and consultation of certain third-party agents as to technical matters." Am. Compl. at 1. Instead, the more likely inference is that Mr. Norberg and Ms. Blatt collaborated to generate the claims in this lawsuit such that arbitration would be avoided. *Cf. Bodner v. Oreck Direct LLC*, 2007 WL 1223777, at *3 (N.D. Cal. Apr. 25, 2007) (explaining, in denying class certification, "that plaintiff's counsel constructed this lawsuit before it had a plaintiff cannot be denied," and that "the conduct in this action does not look good, does not sound good, and does not smell good. In fact, it reeks."). Notably, Mr. Norberg and his counsel have never identified the "Shutterfly user" mentioned in the complaint. *Id.* ¶¶ 27, 29, 31, 33, 37. This type of "artful pleading to avoid arbitration" (*Long*, 453 F.3d at 628) is precisely what estoppel is designed to prevent.

### 2. This Court Should Reject The Fifth District's Approach To Equitable Estoppel And Instead Follow The Decisions Of Other Judges In This District That Apply The Majority Approach To Equitable Estoppel.

We anticipate that Mr. Norberg will argue that all of the above precedents (including those by other judges of this Court) should be disregarded, because the Fifth District has declined to follow the test for equitable estoppel (including the concerted-misconduct theory) applied by federal courts in the Seventh Circuit—and by the vast majority of other state and federal courts across the country (*see* page 14, *infra*). *See Ervin v. Nokia, Inc.*, 812 N.E.2d 534 (Ill. App. Ct. 2004); *Peach v. CIM Ins. Corp.*, 816 N.E.2d 668 (Ill. App. Ct. 2004). In contrast to this overwhelming majority rule, the Fifth District has held—in refusing to order arbitration—that "[a] claim of equitable estoppel exists [only] where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person." *Ervin*, 812 N.E.2d at 541.

But this narrow "detrimental reliance" approach to equitable estoppel is mistaken, at least in the arbitration context. No federal district court in Illinois has followed the estoppel analysis

in *Ervin* and/or *Peach* in the dozen years since they were decided. On the contrary, in at least *five cases* after *Carlisle*—which made clear that equitable estoppel is governed by "principles of state law" in the arbitration context (556 U.S. at 631 (quotation marks omitted))—judges of this Court have continued to apply the "concerted and interdependent misconduct" approach to equitable estoppel described above. *Sanchez*, 2015 WL 231450, at *7; *Paragon Micro, Inc.*, 22 F. Supp. 3d at 889; *Field Sys. Machining*, 2013 WL 1943307, at *4; *Levin*, 2011 WL 2582138, at *6; *Pa. Chiropractic Ass'n*, 713 F. Supp. 2d at 745.

For good reason: The Fifth District's approach to equitable estoppel is idiosyncratic, and it is therefore unlikely that the Illinois Supreme Court—which has not yet addressed equitable estoppel—would adopt it. As the Seventh Circuit has made clear, federal courts sitting in diversity "must make a predictive judgment as to how the *supreme court of the state* would decide the matter if it were presented presently to that tribunal." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 635 (7th Cir. 2002) (emphasis added); *see also id.* at 636 ("*Erie* itself appears to have contemplated that the duty of the federal court, sitting in diversity, is to determine the content of state law as the highest court of the state would interpret it."); *id.* at 637 ("[I]n determining the content of state law, the federal courts must assume the perspective of the highest court in that state . . . ."). Thus, in "the absence of prevailing authority from the state's highest court," federal courts should deviate from the holding of a state's "intermediate appellate court[]" "when there are persuasive indications that the highest court of the state would decide the case differently." *Id.* at 637 (collecting cases).

Those "persuasive indications" are present here. The Fifth District's approach, if adopted more broadly, would place Illinois in a tiny minority among jurisdictions in which courts have addressed the doctrine of equitable estoppel. That is contrary to the approach ordinarily taken by

13

the Illinois Supreme Court. *Cf. Olson v. Etheridge*, 177 Ill.2d 396, 409-10 (1997) (following "the majority rule" in a split among states over third-party beneficiary rights because the majority rule is "consistent with the general principles running throughout contract law" and "[c]ontract law also allows for equitable remedies where the facts compel such a result"). Here, "federal courts of appeal and state courts alike" have widely recognized the concerted-misconduct theory of equitable estoppel. *Meister v. Stout*, 353 P.3d 916, 920-21 & n.3 (Colo. Ct. App. 2015) (cataloging cases, and explicitly declining to follow the minority view of *Ervin* and two other state court decisions that have required a showing of detrimental reliance); *see also, e.g.*, *Case Handyman & Remodeling Servs., LLC v. Schuele*, 959 A.2d 833, 845-46 & n.8 (Md. Ct. Spec. App. 2008) (explicitly rejecting *Peach*), *judgment vacated and appeal dismissed on other grounds*, 989 A.2d 210 (Md. 2010); *German Am. Fin. Advisors & Trust Co. v. Reed*, 969 N.E.2d 621, 627-30 (Ind. Ct. App. 2012) (following the majority view over a dissent advocating for adoption of the *Ervin* approach). Indeed, the majority view is so widespread that the leading treatise on arbitration simply presents it as the current state of the law, without qualification. *See* 1 Domke on Commercial Arbitration, § 13:8.10 (3d ed. 2014).

The Illinois Supreme Court is especially unlikely to diverge from the majority rule because that rule comports with the clear trend in the federal courts, which have uniformly adopted the pro-arbitration approach to the equitable estoppel doctrine described above. The Illinois Supreme Court "give[s] considerable weight to the decisions of federal courts that have addressed . . . the FAA" because "uniformity of decision is an important consideration." *Carter v. SSC Odin Operating Co.*, 927 N.E.2d 1207, 1215 (Ill. 2010). Indeed, in *Carter*, the court unanimously reversed a decision of the Fifth District—the same court that decided *Ervin* and *Peach*—because its ruling was impermissibly hostile to arbitration. *Id.* at 1219. These decisions

would be rendered meaningless if a party could avoid a valid arbitration clause through conduct like that of Mr. Norberg and Ms. Blatt.

Accordingly, there are more than "persuasive indications" (*Allstate*, 285 F.3d at 637) that the Illinois Supreme Court will adopt the approach to equitable estoppel set forth by the Seventh Circuit, federal courts in this State, and the vast majority of other federal *and* state courts across the country. This Court should therefore follow that approach as well. And for the reasons noted above, a straightforward application of that test compels the conclusion that Mr. Norberg is bound by his wife's agreement to arbitrate claims relating to her uploading of photos of him.

### C. The FAA Requires A Stay Of This Action Pending Arbitration.

When, as here, the FAA applies, Section 3 of the Act directs the district court to compel arbitration and stay the lawsuit pending the resolution of arbitration. *See* 9 U.S.C. § 3; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (FAA "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, § 3").

### CONCLUSION

Shutterfly respectfully requests that the Court (i) compel Norberg to arbitrate his claims on an individual basis; and (ii) stay this action pending the outcome of any arbitration.

| | |
|---|---|
| Date: March 10, 2016 | By: /s/ *Lauren R. Goldman* |
| Matthew Provance | Lauren R. Goldman |
| MAYER BROWN LLP | MAYER BROWN LLP |
| 71 South Wacker Drive | 1221 Avenue of the Americas |
| Chicago, IL 60606-4637 | New York, NY 10020 |
| Telephone: (312) 782-0600 | Telephone: (212) 506-2647 |
| mprovance@mayerbrown.com | lrgoldman@mayerbrown.com |
| | Archis A. Parasharami |
| | MAYER BROWN LLP |
| | 1999 K Street, N.W. |
| | Washington, D.C. 20006-1101 |
| | Telephone: (202) 263-3328 |
| | aparasharami@mayerbrown.com |

*Counsel for Defendants Shutterfly, Inc. and ThisLife.com, Inc.*